Booth, Judge,
delivered the opinion of the court:
This is a tax case. The petition alleges a right of recovery upon two items. To the first item the defendant demurs. The facts alleged to sustain the cause of action are as follows: The plaintiff, a Pennsylvania corporation engaged in the manufacture of wire rope, on June 15, 1919, filed with the collector of internal revenue for the proper district its income-tax return for the year 1918. Plaintiff then conceded an income, excess, and war-tax liability upon the return so filed of $306,381.77, and the same was duly paid in four installments without protest. Subsequently the Commissioner of Internal Bevenue, through revenue agents, made an examination of plaintiff’s books of account, and on April 14, 1920, advised the plaintiff that a revised computation of its income-tax return had increased its tax liability for the year 1918 to the extent of $89,094.85. Plaintiff protested this action of the commissioner, but the commissioner made the additional assessment, and it was finally paid by the plaintiff under protest. Thereafter the commissioner discovered an error in his computation resulting in an overpayment of $12,393.09, which amount was on June 10, 1924, refunded to the plaintiff, leaving an aggregate tax assessed, levied, and paid by the plaintiff upon its return, of $383,083.53.
On June 14, 1924, the plaintiff filed with the commissioner a claim for a refund of $100,000, stating therein that the amount so claimed represented the amount by which its tax computed under section 301 of the revenue act of 1918 exceeded its tax computed under sections 327 and 328 of the *465 revenue act of 1918, insisting upon a right to have its tax liability computed in accordance with sections 327 and 328 supra. The commissioner declined to refund. The petition further alleges that as a matter of fact as well as law plaintiff is entitled to have its excess-profits tax and war-profits tax computed in accordance with sections 327 and 328 of the revenue act and not under the provisions of section 301 of the same law. To this end the allegation is made that it is impossible for the commissioner or anyone else to determine the correct amount of plaintiff’s invested capital as-defined in section 326 of the revenue act of 1918; that abnormal conditions exist affecting the capital and income of' the plaintiff which work upon it an exceptional hardship,, evidenced by gross disproportion between the tax paid by it and its tax computed by reference to representative corporations engaged in the same trade or business. To sustain this allegation particular instances are cited. First, it is alleged that plaintiff pursued a policy of charging large sums expended for plant additions and improvements to an expense account and not to capital; second, that prior to the year 1918-plaintiff developed valuable secret processes essential to the profitable operation of its business, and no part of the cost thereof has ever been capitalized, and the commissioner ignored this fact in making up his adjustment of plaintiff’s invested capital; third, that plaintiff, since its organization, has never undergone a reorganization or merger, but has since its organization in May, 1887, conducted an increasing- and important business and thereby acquired a good will which asset is not recorded on its books and the value thereof was ignored by the commissioner in ascertaining plaintiff’s invested capital; that under regulations of the commissioner, its good will is an asset of the value of $1,037,713; fourth, that plaintiff, during the year 1918, borrowed money to use in its business; that on January 1, 1918, plaintiff was using-in its business $114,834.91, borrowed funds, and on December 31, 1918, for a like purpose was using $122,353.82; that its capital stock was $100,000; that at the beginning of the year its percentage of borrowed money to capital stock was 114.8 per cent, and at the end of the year 122.3 per cent; fifth,, *466 it is alleged that the salaries of its officers were abnormally low, averaging but 3.76 per cent of its taxable income for the year, and finally concluding with the allegation that a comparison of the rate of tax imposed upon the plaintiff with the rate imposed upon representative corporations engaged in a like trade or business would disclose the fact that as to the plaintiff the rate exacted is 63.87 per cent of its taxable income, whereas as to representative corporations the rate is not in excess of 55 per cent of their taxable income. The prayer for judgment is somewhat obscure. If we correctly apprehend it, suit is for the recovery of $100,000 on this item with interest thereon from date of the payment of the final installment, viz: December 31, 1919.
Sections 327 and 328 of the revenue act of 1918 (ch. 18, 40 Stat. 1093), provide in terms as follows:
“ Sec. 327. That in the following cases the tax shall be determined as provided in section 328:
“(a) Where the commissioner is unable to determine the invested capital as! provided in section 326;
“(b) In the case of a foreign corporation;
“(c) Where a mixed aggregate of tangible property and intangible property has been paid in for stock or for stock and bonds and the commissioner is unable satisfactorily to determine the respective values of the several classes of property at the time of payment, or to distinguish the classes of property paid in for stock and for bonds, respectively ;
“(d) Where, upon application by the corporation, the commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, nor (2) in which 50 per centum or more of the gross income of the corporation for the taxable year (computed under section 233 of Title II) consists of gains, profits, commissions, or other income derived on a cost-plus *467 basis from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.
“ Sec. 828. (a) In the cases specified in section 827 the tax shall be the amount which bears the same ratio to the net income of the taxpayer (in excess of the specific exemption of $3,000) for the taxable year, aé the average tax of representative corporations engaged in a like or similar trade or business bears to their average net income (in excess of the specific exemption of $3,000) for such year. In the case of a foreign corporation the tax shall be computed without deducting the specific exemption of $3,000 either for the taxpayer or the representative corporations.
“ In computing the tax under this section the commissioner shall compare the taxpayer only with representative corporations whose invested capital can be satisfactorily determined under section 326 and which are, as nearly as may be, similarly circumstanced with respect to gross income, net income, profits per unit of business transacted and capital employed, the amount and rate of war profits or excess profits, and all other relevant facts and circumstances.
“ (b) For the purposes of subdivision (a) the ratios between the average tax and the average net income of representative corporations shall be determined by the commissioner in accordance with regulations prescribed by him with the approval of the Secretary.
“ In cases in which the tax is to be computed under this section, if the tax as computed without the benefit of this section is less than 50 per centum of the net income of the taxpayer, the installments shall in the first instance be computed upon the basis of such tax; but if the tax so computed is 50 per centum or more of the net income, the installments shall in the first instance be computed upon the basis of a. tax equal to 50 per centum of the net income. In any case, the actual ratio when ascertained shall be used in determining the correct amount of the tax. If the correct amount of the tax when determined exceeds 50 per centum of the net income, any excess of the correct installments over the amounts actually paid shall on notice and demand be paid, together with interest at the rate of one-half of 1 per centum per month, on such excess from the time the installment was due.
“ (c) The commissioner shall keep a record of all cases in which the tax is determined in the manner prescribed in subdivision (a), containing the name and address of each taxpayer, the business in which engaged, the amount of *468 invested capital and net income shown by the return, and the-amount of invested capital as determined under such subdivision. The commissioner shall furnish a copy of such record and other detailed information with respect to such cases when required by resolution of either House of Congress, without regard to the restrictions contained in section 257.”
Section 826 of the revenue act of 1918 (40 Stat. 1092) defines invested capital and is in terms as follows:
“(a) That as used in this title the term 1 invested capital ’ for any year means (except as provided in subdivisions (b) and (c) of this section);
“(1) Actual cash bona fide paid in for stock or shares;
“(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the-actual cash value of such tangible property at the time paid in is shown to the satisfaction of the commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus: Provided, That the commissioner shall keep a record of all cases in which tangible property is included in invested capital at a value in excess of the stock or shares issued therefor, containing the name and address of each taxpayer, the business in which engaged, the amount of invested capital and net income shown by the return, the value of the tangible property at the time paid in, the par value of the stock or' shares specifically issued therefor, and the amount included under this paragraph as paid-in surplus. The commissioner shall furnish a copy of such record and other detailed infor■mation with respect to such cases when required by resolution of either House of Congress, without regard to the restrictions contained in section 257;
“(8) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year;
“(4) Intangible property bona fide paid in for stock or' shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor,, or (c) in the aggregate 25 per centum of the par value of the' total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest;
“(5) Intangible property bona fide paid in for stock or shares on or after March 3, 1917, in an amount not exceeding- *469 (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding at the beginning of the taxable year, whichever is lowest: Provided, That in no case shall the total amount included under paragraphs (4) and (5) exceed in the aggregate 25 per centum of the par value of the total stock or shares of the corporation -outstanding at the beginning of the taxable year; but
“ (b) As used in this title the term £ invested capital ’ does not include borrowed capital.
“(c) There shall be deducted from invested capital as .above defined a percentage thereof equal to the percentage which the amount of inadmissible assets is of the amount of admissible and inadmissible assets held during the taxable jear.
“(cl) The invested capital for any period shall be the •average invested capital for such period, but in the case of a corporation making a return for a fractional part of a year, it shall (except for the purpose of paragraph (2) of subdivision (a) of section 311) be the same fractional part of such average invested capital.
. “ The average invested capital for the pre-war period shall be determined by dividing the number of years within that period during the whole of which the corporation was in •existence into the sum of the average invested capital for such years.”
A tax case in this court is a suit against the United States founded under our jurisdictional act (section 145, Judicial Code) upon a law of Congress. The right to sue for internal revenue tax is conditioned upon its payment, application for a refund and denial of the same. Rook Island, Arkansas & Louisiana R. R. Co. v. United States, 254 U. S. 141. Under the allegations of the petition, heretofore recited, it is obvious that the present suit is for a recovery of an alleged illegal tax exaction resulting from the alleged failure of the commissioner to apply to plaintiff’s tax return the applicable sections of the revenue law — i. e., sections 327 and 328, supra. Plaintiff does not allege that if section 301 of the revenue act of 1918 has been legally applied in the assessment and levy of the taxes involved, an over or illegal assessment follows, and judgment for the amount paid thereunder is recoverable. On the contrary. *470 the gravamen of the complaint is that sections 327 and 328 of the statute are the applicable sections of the law under which the assessment and levy should have been made, and if so made, would result in a difference of $100,000 in the amount paid and what should have been paid. The court is manifestly without authority to compute a tax under sections 327 and 328 of the revenue law. The commissioner has refused to apply the sections as requested, and we have no means to compel him to do so. Sections 327 and 328 of the statute point out the method to be pursued by the commissioner in applying special assessment. In his office, and available to him, are the facts, the records, voluminous and important, upon which the commissioner relies in making comparisons with representative corporations engaged in a like trade or business, and upon no possible hypothesis has the court any means of knowing, in the absence of an official computation by the commissioner, what the amount of plaintiff’s tax would be under the conditions set forth in the law. Until the commissioner has acted, and the record of his actions is before the court, we are powerless to determine that he should have done something which under the law he positively refuses to do.
Plaintiff admits that internal-revenue taxes are justly due from it to the United States. The issue presented by the petition goes only to the amount., We are not asked to set aside the assessment and levy made under section 301 and award judgment for all the taxes paid thereunder. The relief sought by the plaintiff is a judgment founded upon a law of Congress under which the plaintiff has not incurred a tax liability, under which it has been assessed no taxes, and under which it has paid no taxes. The plaintiff’s taxes were assessed under section 301. They were levied and collected under that section, and no complaint is made that if the section is applicable the amount assessed and paid is illegal. The plaintiff, in our view of the case, has mistaken the remedy. As said by the Supreme Court in the Rock Island case, supra, “ Men must turn square corners when they deal with the Government. If it attaches even purely formal conditions to its consent to be sued those conditions *471 must be complied with.” Clearly the plaintiff has paid no taxes under sections 327 and 328 of the statute. The commissioner has not levied or assessed any under the sections, and no claim for refund has been made or refused for any sum or sums exacted of the plaintiff under the above sections. What sum the commissioner might exact or might have exacted under the special assessment provisions relied upon is a problem with which under the petition we are not concerned, and until he does apply the provisions the court is powerless to proceed.
In addition to what has been said, the provisions of the revenue law authorizing special assessment, confer upon the commissioner discretionary power. He is vested by Congress with the right to determine from the facts of each case when the abnormal conditions obtain to warrant the 'application of the law, which by its very terms indicates that only in exceptional cases is he to resort thereto. The plaintiff does not question the authority of Congress to confer the jurisdiction upon the commissioner, and does not challenge in the petition his good faith or charge abuse of discretion in refusing it classification under the special assessment sections. Plaintiff did not in the beginning question the amount of taxes it should pay, the return made by it, and the taxes due as per the same were voluntarily paid. No complaint ivas lodged against the exaction until additional taxes were assessed and demanded. Then for the first time the plaintiff insists upon its alleged right to special assessment. Then and only then was the commissioner acquainted with its allegations of an abnormal status and the many unusual factors which prevented him from ascertaining invested capital under section 326. The presumption is that the commissioner discharged his duty under the law. In the absence of any information to the contrary, we may not presume that the commissioner found the statutory difficulties which precluded an assessment under section 301. On the contrary, his inaction indicates that no such difficulties were encountered. We are without jurisdiction to substitute our judgment for the commissioner’s until he exacts taxes under sections 327 and 328 and the same are paid thereunder, *472 and a refund asked and refused. We are without jurisdiction to award a judgment as claimed upon the court’s computation of what might under the law be due. Louisiana v. McAdoo, 234 U. S. 627; United States v. Babcock, 250 U. S. 328; Ray Consolidated Copper Co. v. United States, 268 U. S. 373.
The demurrer to the first item of the petition will be sustained, and as to that item the petition is dismissed. It is so ordered.
Moss, Judge; Geaham, Judge; Hat, Judge; and Campbell, Chief Justice, concur.
On October 17, 1927, on motion of plaintiff, defendant-consenting, the petition was dismissed.