**CENTRAL IRON & STEEL CO. v. UNITED STATES.**

No. J–184.

Court of Claims.

June 19, 1933.

Ralph J. Baker, of Harrisburg, Pa. (Hause, Evans & Baker, of Harrisburg, Pa., on the brief), for plaintiff.

James A. Cosgrove, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

The first question is whether interest of $306,168.01 on unsecured claims of an insolvent corporation paid by the receivers thereof on May 28, 1917, was a proper deduction in that year or whether it was an accrued expense annually for income and excess profits tax purposes from February 6, 1912, when the receivers were appointed.

Plaintiff contends that interest on such indebtedness of an insolvent corporation does not accrue or become a fixed liability of the receivers at any time during which the estate is in the custody of the law, unless and until there is a surplus in the total assets in the hands of the receivers over the amount necessary to satisfy the principal indebtedness due.

The defendant contends that where the books are kept on the accrual basis, interest on the principal of all indebtedness of the insolvent estate accrues during the receivership and is deductible, if at all, from gross income in each taxable year and may not be deducted in whole or in part only in the year in which a surplus is created, or in the year in which it is paid. The allowance of interest compensation to unsecured creditors after the appointment of equity receivers is contingent and depends upon the creation of a surplus in the estate after payment in full of the principal of the unsecured claims, and, in our opinion, the right of the creditors to interest and the obligation of the receivers to pay such allowance do not exist until such surplus has in fact been created. In this case the Central Iron & Steel Company was insolvent and receivers were appointed by the court of common pleas of Pennsylvania February 6, 1912. The facts show that the estate of the corporation was insolvent and insufficient to pay the principal of the secured claims (first-mortgage bonds) and the unsecured claims, and remained so until about May 28, 1917; that only by good management and with the aid of extraordinarily favorable conditions were the receivers able to create a surplus in the estate after January 1, 1917, which resulted solely from large earnings in the manufacture of ship plates

for which the war in Europe brought about an unprecedented demand. The receipt of these earnings was entirely dependent on the continuance of the war and the demand for ship plates, and this condition alone made it possible for the receivers to pay from the insolvent estate even the principal of the unsecured claims. The ability of the receivers to make earnings to create an estate sufficient to pay the principal indebtedness of the corporation was not certain until after January 1, 1917. No surplus whatsoever in excess of the principal of the claims against the corporation existed until after that date. Until such surplus existed there was no certainty that any interest would ever be paid and, under the well-established rule in equity receiverships or in bankruptcy, that provable claims of unsecured creditors not entitled to priority do not include interest after the date of appointment of receivers or of filing of the petition, there was no liability to pay any compensation or interest to creditors due to delay in the payment of the principal indebtedness caused by the receivership. Thomas v. Western Car Co., 149 U. S. 95, 116, 13 S. Ct. 824, 833, 37 L. Ed. 663; Sexton v. Dreyfus, 219 U. S. 339, 344, 31 S. Ct. 256, 257, 55 L. Ed. 244; Board of Com'rs of Shawnee County, Kan. v. Hurley (C. C. A.) 169 F. 92, 94, and Tredegar Co. v. Seaboard Air Line Ry. et al. (C. C. A.) 183 F. 289.

In Sexton v. Dreyfus, supra, the court said, "No one doubts that interest on unsecured debts stops," and in Thomas v. Western Car Co., supra, the court pointed out that, "As a general rule, after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claims against the funds." In Brown v. Leo (C. C. A.) 34 F.(2d) 127, 128, a bankruptcy case, the court held that: "It is true that ordinarily the creditors of a bankrupt cannot be paid in full, and that interest on unsecured claims stops when the petition is filed. With the exception of after-accruing interest on the security held, this applies to secured claims as well. Board of Com'rs of Shawnee Co., Kan. v. Hurley (C. C. A.) 169 F. 92 [supra]; Sexton v. Dreyfus and Sexton v. Lloyds Bank, 219 U. S. 339, 31 S. Ct. 256, 55 L. Ed. 244 [supra]. The manifest reason for this is that on that date each creditor has an equitable interest in the bankrupt estate, which is that proportion of the net assets that the amount of his provable claim bears to the total of the provable claims."

In Pintsch Compressing Co. v. Buffalo Gas Co. (C. C. A.) 280 F. 830, 844, the court

allowed interest on unsecured claims in an equity receivership only to the day before the appointment of receivers, saying that: "As, in the case at bar, it is apparent that the claims of creditors cannot be paid in full, interest on the principal will run [only] to September 24, 1914." This rule is applied and followed in Pennsylvania. Jamison & Co.'s Estate, 163 Pa. 143, 29 A. 1001; Murphy Co.'s Estate, 214 Pa. 258, 265, 63 A. 745, 5 L. R. A. (N. S.) 1147, 6 Ann. Cas. 308; Fulton's Estate, 65 Pa. Super. Ct. 437; Interest on Bonus on Capital Stock, 12 Dauphin Co. Rep. 259; McGinnis v. Corporation Funding & Finance Co. (D. C.) 8 F.(2d) 532, 541; Pearsall v. Central Oil & Gas Co. of America (D. C.) 23 F.(2d) 716.

In the case of Interest on Bonus on Capital Stock, supra, the court held that interest was not allowable after appointment of a receiver, even upon the claim of the state for a bonus theretofore due on an increase of capital stock. The rule is adopted generally and no departures from it have been found where claims entitled to priority had not been involved. In 2 Tardy's Smith, Receivers (2d Ed.) p. 1678, after stating the rule relating to creditors with priority claims, it is said that: "However interest is not allowed to members of a class if the class fund is not sufficient to allow interest to all; thus general unsecured creditors, whether their claims bear interest by contract or simply by way of damage for delay in payment, are not allowed interest in case of insolvency."

In Gillett v. Chicago T. & T. Co., 230 Ill. 373, 82 N. E. 891, 906, a receivership case, the court said with respect to the claim to interest after appointment of receivers that: "The rights of all the creditors are fixed when the court takes jurisdiction of the property. * * * It is therefore inequitable that interest should thereafter be allowed on the claims where certain of the claims draw interest at one rate and others draw interest at a lower rate or do not draw interest at all. If interest under such circumstances was allowed at the rate fixed by the contract, and the litigation extended, as here, through many years, the mere lapse of time would enable those holding claims drawing a high rate of interest to materially lessen the proportion of the assets which would pass to those holding claims drawing a lower rate of interest or drawing no interest at all. This is not permitted."

It is only when a surplus has actually been realized from the estate, after payment in full of claims having priority, if any, and after payment in full of the principal due unsecured and general creditors, that the question arises as to the right of these creditors to interest after appointment of the receivers, unless, under some plan or arrangement with the approval of the court, the property and business are turned back to the corporation which agrees to pay all indebtedness and liabilities, as was the case in American Iron & Steel Mfg. Co. v. Seaboard Air Line Railway, 233 U. S. 261, 34 S. Ct. 502, 505, 58 L. Ed. 949. When a surplus has in fact been realized some measure of compensation is given by the court to these creditors on an equitable basis, after the deduction of which the residue, if any, is returned to the corporation or to the bankrupt. In such case the rule is established that equity requires such compensation to be given and that only the balance remaining will be awarded to the corporation upon closing the receivership. Johnson v. Norris (C. C. A.) 190 F. 459, L. R. A. 1915B, 884; Ohio Savings Bank & Trust Co. v. Willys Corp. (C. C. A.) 8 F.(2d) 463, 44 A. L. R. 1162. In all such cases, however, the right to interest compensation depends upon whether a surplus has been created over the principal of the claims. The existence in fact of a surplus is the basis of an obligation to pay and the right to receive.

In Re Murray, 6 Paige (N. Y.) 204, quoted and approved in Johnson v. Norris, supra, it was said that: "As to subsequent interest, if the debts are not paid at that time, and the fund which is afterwards realized by the assignee is more than sufficient to pay the amount thus found due at the time of the assignment, the interest on all the debts subsequent to the assignment should be paid rateably out of the surplus." See, also, People v. Merchants' Trust Co., 187 N. Y. 293, 79 N. E. 1004; U. S. Fidelity & Guaranty Co. v. Carnegie Trust Co., 161 App. Div. 429, 146 N. Y. S. 804, 809; Green v. Stone, 205 Ala. 381, 87 So. 862; First National Bank v. Campbell Co., 52 Tex. Civ. App. 445, 453, 114 S. W. 887; Lippitt v. Thames Loan & Trust Co., 88 Conn. 185, 206, 90 A. 369; Huff v. Bidwell (C. C. A.) 218 F. 6.

The defendant relies almost entirely on American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., supra, in support of its contention that the interest on the unsecured claims of the insolvent corporation was an accrued liability of the receivers during each of the years from February 6, 1912, to May 28, 1917; but we think that case supports the rule above mentioned rather than the propo-

sition for which it is cited. The question in that case was whether the American Iron & Steel Company was entitled to interest on its claim for the period of the receivership for supplies theretofore sold to the railroad company on a credit of "30 days, 1 percent. Discount allowed for payment in 10 days." There was no question as to whether there were sufficient funds to pay interest, and interest had been paid on other claims. The American Iron & Steel Company filed its claims with the special master in receivership proceedings relying upon a statutory lien under the Labor and Supply Lien Statute, Code of Virginia [1887] § 2485, and the special master reported against the allowance of interest on the claim. Subsequently, on the petition of the railway company, a decree was entered approving "a plan of adjustment" of the finances of the company, and providing for the turning back to the company of its property and for the ending of the receivership at a certain time. From time to time during the receivership and at the ratification of the plan of adjustment and as a part thereof all interest due at the time of appointment of the receivers and accruing during the receivership on all the funded and many of the floating obligations of the railway company was paid in full. The amount so paid as interest aggregated some millions of dollars. The decree approving the plan of adjustment provided that the company should pay in due course of business all its *obligations, liabilities, and indebtedness* and reserved the right, in the event of default in that regard, to any claimant aggrieved by such default to present his petition to the court to have his claim enforced "to the same extent as though the receivership had continued." After the termination of the receivership the steel company filed its petition in the court praying that its exceptions to the special master's report be sustained and for the enforcement of its claim, including interest thereon during the period of the receivership, and seeking to enforce it not upon the doctrine of an equitable lien but as a statutory lien. The Circuit Court refused to allow interest for the period of the receivership and this action was reversed by the Supreme Court. The railway company insisted that the indebtedness did not bear interest, and that interest could not have been recovered on the claim even in an action at law; that the right to interest was a matter of agreement and could be recovered as a part of the debt only where it had been reserved in the contract or where a promise was implied from the character of the note or the instrument evidencing the debt; that, whether treated as a part of the debt or allowed as damages, interest could only be charged against the railway company because of delay due to its own fault, and that in this instance the failure to pay was due to the act of the law in taking its property into custody and operating the same by receivers in order to prevent the disruption of a great public utility. The Supreme Court recognized and followed the general rule that after property of an insolvent is in custodia legis interest thereafter accruing is not allowed on debts payable out of the funds realized by the sale of the property, not because the claims had lost their interest-bearing quality during that period but because of a necessary and enforced rule of distribution, due to the fact that in case of receiverships the assets are generally insufficient to pay debts in full, and stated, "But that rule did not prevent the running of interest during the receivership; and if as a result of good fortune or good management, the estate proved sufficient to discharge the claims in full, interest as well as principal should be paid"—a proposition which is not controverted in the present case. The American Iron & Steel Mfg. Company Case simply recognizes and applies the rule that interest on interest-bearing indebtedness accumulates during the period of the receivership, which is not questioned by plaintiff in the instant case, and that if a surplus exists and the estate proves sufficient to discharge the claims in full, interest, as well as principal, should be paid. Moreover, in the American Iron & Steel Mfg. Company Case, supra, the indebtedness involved was secured by a lien and was a claim "of the highest dignity." In addition it appears that the question presented in this case was not involved in the American Iron & Steel Mfg. Company Case,—namely, whether interest accrues and becomes an absolute liability of the receivers until there is a surplus, where the estate is insufficient to pay the principal of the indebtedness. In that case interest of several millions of dollars accruing during receivership was paid by the receivers on the indebtedness of the corporation under the plan of adjustment, under which the property was turned back to the railway company, and the decree of the court; such plan and decree provided that the company "should pay in due course of business all its obligations, liabilities, and indebtedness," and reserved the right, in the event of default by the railway company to pay any such obligations, liabilities, or indebtedness, to any claimant aggrieved by such default to present its petition to the court to have its claim en-

forced. The railway company was therefore liable for interest on its interest-bearing indebtedness during the period of the receivership. In conclusion, the court said: "As a fact interest was paid on the floating indebtedness, out of earnings made by the receivers appointed first under a bill which asked that the property be taken in charge by the court so that ultimately all creditors would be paid in full. We must assume that the court had the right to make these payments, and if so it had a like right in the case of the claim for railway supplies. No question is raised as to the power of the court to require payment of the principal of appellant's debt, and, if the court could require a payment of the principal, it could also enforce the payment of the interest, which was but an incident of that debt. If the property had remained in the hands of the receiver the lienor might have been permitted to intervene and *share in the fund realized by the sale of property in the hands of receivers appointed*, first, on the application of the railway, in the interest of all creditors, and continued by an order entered in the bill to foreclose the mortgage." (Italics ours.)

In view of the settled principles of law applicable to equity receiverships, as announced in the foregoing cases, we are of opinion that the interest compensation distributed by the receivers to unsecured creditors from a surplus created after January 1, 1917, did not accrue as a liability under the applicable revenue laws and regulations in any year between February 6, 1912, and January 1, 1917. Lucas v. American Code Co., Inc., 280 U. S. 445, 449, 50 S. Ct. 202, 74 L. Ed. 538; Burnet v. Logan, 283 U. S. 404, 413, 51 S. Ct. 550, 75 L. Ed. 1143. The essentials necessary to constitute accrual of liability or accrual of income under the revenue acts are to be judged by the general rules of law applicable to the circumstances of the transaction in question, and the parties to it, and the rules which have been established by the decisions to test the existence or nonexistence of accrual. From the standpoint of proper reflection of income the payments that were ultimately made by the receivers of plaintiff in the calendar year 1917 under part VI of said decree, so modified, would not, at any time before January 1, 1917, have been stated as a liability, or been included in stating the liabilities as of any time before said date. Such payments would not have been a liability to have been accrued in a statement of liabilities made at any time prior to January 1, 1917. At all times prior to the year 1917 the liability of

the receivers to pay interest or the right of the creditors to receive the same was only a mere possibility, wholly contingent upon facts and circumstances not possible to foretell with anything like certainty. It is thus apparent that although under a general rule of law there may be a possibility of right in the creditors to receive payment in the future or of obligation of the receivers to pay in the future, as long as the facts and circumstances to determine such possibility cannot be foretold with any degree of certainty there is neither income nor liability under the revenue acts in respect of the subject matter. Lucas v. American Code Co., Inc., supra; Burnet v. Logan, supra. In the circumstances of this case it is our opinion that interest on the unsecured claims of the corporation while in the hands of the receivers was not at any time prior to January 1, 1917, an item as to which the rights of the persons to receive it or the obligation of the receivers or the corporation to pay it had become definite, certain, and free from dependency on uncertain future events within the meaning of the revenue acts so that it was either accrued income to a creditor on the accrual basis ultimately receiving part payment in 1917, or an accrued liability of the receivers or the corporation also on the accrual basis. Any other conclusion would require that the administrator of every estate taken into receivership or bankruptcy, or under assignment for the benefit of creditors, must accrue as a liability a charge for interest on the indebtedness against the estate, whether secured or unsecured, whether with or without hope of payment, and regardless of the insolvency of the estate, provided only that such administrator keeps his books and records and makes the federal tax rate on the accrual basis. Such a view would also require that creditors of an insolvent estate accrue and report as income interest which they might never receive and which is wholly dependent on the course of future events. Lucas v. American Code Co., Inc., supra; North American Oil Consolidated v. Burnet, 286 U. S. 417, 52 S. Ct. 613, 76 L. Ed. 1197; Lucas v. North Texas Lumber Co., 281 U. S. 11, 50 S. Ct. 184, 74 L. Ed. 668; Malleable Iron Range Co. v. United States, 62 Ct. Cl. 425; S. Naitove & Co., Inc., v. Commissioner, 59 App. D. C. 53, 32 F.(2d) 949; United States v. Block & Kohner Mercantile Co. (D. C.) 33 F.(2d) 196; Commissioner v. R. J. Darnell, Inc. (C. C. A.) 60 F. (2d) 82, 84; Great Northern Ry. Co. v. Commissioner, 8 B. T. A. 225; Northwestern Improvement Co. v. Commissioner, 14 B. T. A. 79.

The next question raised by the defendant is that if the interest paid by the receivers in May, 1917, on unsecured claims of creditors of the corporation from a surplus created after January 1, 1917, to the extent of $355,466.24 and disallowed by the commissioner to the extent of $306,168.01 was a proper deduction in 1917, the plaintiff is entitled to a total deduction of only $126,895, or $29,605.94 in excess of the amount of $97,-289.06 allowed by the commissioner as interest accrued in 1917 under the limitation of section 12 (a) (3) of the Revenue Act of 1916 (39 Stat. 768) as amended by the Revenue Act of 1917 (40 Stat. 334, § 1207). We cannot agree. The limitation contained in section 12 (a) (3) of the Revenue Act of 1916 is a limitation upon the amount of the principal of indebtedness applicable as a basis, and not a limitation upon the amount of interest which may be deducted. The principal may not be larger than the paid-up capital stock at the close of the tax year plus one half of the interest-bearing indebtedness then outstanding. The principal upon which interest may be deducted may not be larger than the paid-up capital stock at the close of the year plus one half of the interest-bearing indebtedness at the close of such year.

The obvious purpose of this limitation, which had also been contained in the act of 1913, 38 Stat. 166, has been stated by this court in Brilliant Coal Co. v. United States, 59 Ct. Cl. 481, 492, and, so far as we have been able to find, has not since been questioned, and is as follows: "It was a provision which accomplished a purpose in that it imposed a limitation on corporations having a small capital stock but reaping excessive profits from the employment of borrowed capital in large and disproportionate amounts." The court also held at page 493 of 59 Ct. Cl., that "a limitation [is] on the principal sum." It was held that the limitation must be determined by the application of limitation separately as to each year over which the calculation of interest is made on a time basis. The decision on this point has never been questioned. Two points were involved in that case. The first was whether bond interest coupons due in years prior to 1917 but paid in that year were distributable in the return for 1917 and the second was the interpretation of limitation on section 12 (a) (3) of the 1916 act. Although one phase of the decision in that case seems to have been that the deduction was allowable whether the taxpayer employed the accrual or the cash-receipts basis of accounting, we may disregard this part of the decision since the taxpayer before the court in that case in fact employed the cash receipts and disbursements method of accounting, and, for this reason, the government dismissed its perfected appeal. United States v. Brilliant Coal Co., 269 U. S. 588, 46 S. Ct. 12, 70 L. Ed. 427. As the legal liability to pay the interest on the legal dates of maturity of coupons was fixed and subjected to no contingency, the result on this point would not be followed if in fact the accrual basis of accounting were used. United States v. Anderson et al., 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; Cumberland Glass Mfg. Co. v. United States, 44 F.(2d) 455, 71 Ct. Cl. 44. However, the construction by the court of section 12 (a) (3) as being a limitation upon the amount of the principal of indebtedness applicable as a basis was correct as applied to a taxpayer on a cash basis or to a case like the present where there was no fixed liability to pay the interest in any year prior to 1917 and, therefore, no accrual within the meaning of the revenue acts at any time prior to January 1, 1917. The decision of this court in United States v. Brilliant Coal Co., supra, should therefore be properly considered as one involving a taxpayer on a cash basis who had in the taxable year paid interest on indebtedness including interest coupons accruing in earlier years. On this basis the taxpayer was entitled to the deduction claimed unless reduced by the limitation provided in section 12 (a) (3), supra. The decision of this court, however, is authority that the construction of section 12 (a) (3) now contended for by the defendant is not correct. It follows from the decision in the Brilliant Coal Company Case that even though the taxpayer is on an accrual basis, if the so-called interest was subject to a contingency which prevented it from accruing as a liability until the taxable year in question, the taxpayer is entitled to the deduction of such interest in such year as if it were on a cash basis. The contingency operates in defining the year of a deduction in the case of a taxpayer on an accrual basis to produce the same result as payment in case of a taxpayer on a cash basis. When the taxable year is thus defined the problem of limitation is precisely the same regardless of distinction between a cash and an accrual basis. In each case therefore the only remaining problem is the limitation. If, as the court decided in the Brilliant Coal Company Case, and the government conceded by dismissing the appeal, the mere limitation upon the principal sum does not prevent the entire deduction in one case, it does not prevent it in another. That

134

decision governs the question presented in this case and the limitation in question does not bar the deduction of the full amount claimed by plaintiff. Arts. 180 and 181, Regs. 33, accord with this view.

We conclude, therefore, that the limitation in section 12 (a) (3) is properly to be considered a limitation upon the principal of indebtedness upon which interest may be deducted, and not upon the amount of interest deductible, provided the amount claimed as a deduction has been paid in the taxable year on a cash basis or has become an accrued liability in such year on the accrual basis, and, if properly applied, the principal of indebtedness limitation be not exceeded in respect of any year drawn into the calculation of interest on a time basis; when so applied the entire amount paid, if upon a cash basis, or the entire amount accrued, if upon an accrual basis, is deductible in such taxable year. The findings show that the present case fully meets the requirements of the limitation and that the total interest claimed as a deduction for 1917 is not affected.

■ The last question in the case concerns the defendant's contention that in any event plaintiff cannot recover more than $61,074.80, being the tax and interest paid October 10, November 10, and December 14, 1926 (finding 32), for which a claim for refund was filed March 7, 1928, upon which the commissioner rendered no decision. It is the contention of the defendant that the first claim for refund for $400,000 filed July 14, 1923, related wholly to the computation of the tax under section 210 of the Revenue Act of 1917, and that this court has no jurisdiction of the subject matter of such claim; that the sworn statements of fact and the grounds filed in connection with the first claim for refund on October 2, 1924, and April 6, 1925, with specific reference to the right to the deduction of the interest involved in this case, cannot be considered as amplifying or enlarging the ground of the original claim for refund so as to entitle the plaintiff to maintain this suit for the recovery of any portion of the original tax or interest paid.

We are of opinion that plaintiff is entitled to maintain this suit under the claims for refund made and under the original and amended petitions filed herein, and to recover the total overpayment of $138,237.92 for 1917 and the overpayments of interest collected thereon in the amount of $8,135.53. July 6, 1923, plaintiff filed with the commissioner an application for computation of its profits tax for the calendar year 1917 under section 210 of the Revenue Act of 1917 on the ground that its invested capital could not be satisfactorily determined, and on July 14, 1923, it filed a claim for refund of $400,000, stating the only specific ground for a refund existing at that time, namely, that the invested capital could not be satisfactorily determined and that the profits tax should be computed under section 210. In addition, the claim also stated as a general ground that "this claim is accordingly filed to protect all rights under section 252 of the Revenue Act of 1921 pending the final disposition of the case." The last-mentioned ground was of necessity general because the taxpayer did not know at that time what adjustments the commissioner might make in the audit of the tax liability for 1917 which might offset any overpayment to which it might be entitled under the specific grounds stated in the claim, and as to which it might desire to amend. See Lewis v. Reynolds, 284 U. S. 281, 52 S. Ct. 145, 76 L. Ed. 293; Bemis Brothers Bag Co. v. United States, 289 U. S. 28, 53 S. Ct. 454, 77 L. Ed. 1011, decided March 13, 1933. The case proceeded before the commissioner and the plaintiff submitted facts and argument in support of its application for computation of its tax under section 210. In the course of consideration and audit the commissioner allowed the application for computation of the profits tax under section 210 and in September, 1924, advised the plaintiff at a conference on the case that determination under section 210 would be allowed, but, in his opinion, the entire amount of interest paid by the receivers in May, 1927, on claims against the corporation was not a proper deduction for 1917 and that income should be accordingly increased. The question of the propriety of this deduction was first raised by the commissioner in connection with the reduction in the tax paid through the computation of tax under section 210 of the Revenue Act of 1917 and was brought forward by the commissioner as a counterbalancing item against the overpayment resulting from the determination of the tax under section 210; whereupon the plaintiff, on October 2, 1924, prepared and filed with the commissioner a sworn statement of facts and grounds in connection with its claim for refund as an amplification and amendment of the general ground stated in such claim supporting its claim that the deduction of the interest paid in 1917 was proper. The statute of limitation for filing a claim for refund had not expired at this time. The purpose of this enlargement of

the claim for refund was to protect plaintiff's right to any overpayment resulting from the allowance of its application for determination of the tax under section 210 and its right to sue for the overpayment thus resulting if the same should be offset by an increase of income through an adjustment in the interest deduction. The first amplification and amendment of the general ground for refund was filed October 2, 1924, at the express request of the commissioner and was accepted and considered by him. Thereafter, on March 12, 1925, the commissioner formally advised plaintiff by a letter of that date that he had allowed its application for computation of its profits tax under section 210 which showed a reduction in the tax paid and, in the same letter, advised that income had been increased by the disallowance of a portion of the interest paid by the receivers in 1917 and claimed as a deduction from gross income for that year, which operated to wipe out the reduction in tax liability through the allowance of the application under section 210. This was a preliminary determination, and, upon the receipt of notice, plaintiff immediately renewed its claim that the entire amount of interest paid in 1917 constituted a proper deduction in that year and that the overpayment resulting from a determination of the tax under section 210 should be refunded. On April 6, 1925, also before the statute of limitation for filing a claim for refund for 1917 had expired, plaintiff again filed with the commissioner a detailed statement of facts and grounds in connection with its claim for refund and in support of its contention that the interest deduction was proper. Further hearings were had thereon, at which the issue involved in this suit was fully stated, argued, and submitted to the commissioner and was considered and decided by him. Thereafter the commissioner, on April 9, 1926, made his final determination on the claim for refund, as amplified and amended, in which decision he specifically acted on the issue involved in this case. In this final determination the commissioner computed the tax under section 210 of the Revenue Act of 1917, which action reduced the tax liability, including the interest collected, below the amount which had been collected in cash or by credit, and offset such reduction by increasing the income through the disallowance of $306,168.01 of the interest paid in 1917 and claimed as a deduction in that year. The commissioner's action in increasing income by disallowing as a deduction a portion of the interest paid in 1917 wiped out the reduction in tax and interest

theretofore collected in cash or by credit through the computation of tax under section 210 and showed a further tax of $55,522.55 due for 1917. In his final decision of April 9, 1926, the commissioner disallowed and rejected in full the claim for refund as amplified and amended. In due course plaintiff was compelled to pay and did pay, in October 1926, the balance of $55,522.55, together with interest of $5,552.25, in November and December, 1926. Thereafter, on March 7, 1928, plaintiff duly filed a claim for refund of the total of these amounts upon which claim the commissioner took no action.

On April 6, 1928, this suit was instituted. The original petition stated a cause of action to recover the overpayment of tax and interest theretofore collected which would have resulted, had the commissioner not increased income by the amount of $306,168.01 through the disallowance of that amount of interest paid by the receivers in 1917 and claimed as a deduction in that year.

This original petition set forth in substance the facts with reference to the actions taken as hereinbefore detailed. At the time this petition was filed the commissioner had rendered no decision on the second claim for refund of the balance of the tax and interest collected in 1926 and the six months' period allowed by the statute for such action before suit had not expired and did not expire until after the statute of limitation for instituting suit upon the disallowance of the first claim on April 9, 1928. Thereafter, on September 3, 1929, more than six months after the filing of the second claim for refund on March 7, 1928, and within four years after collection of the tax and interest in October, November, and December, 1926, plaintiff filed an amended petition repeating the grounds set forth in the original petition and also the necessary facts with reference to the payment of the additional tax and interest in 1926 and the filing of the claim for refund thereof.

In these circumstances we are of opinion that the original claim for refund, as amplified and amended, and the second claim for refund fully support the cause of action set forth in the original and amended petitions; that this court has jurisdiction to consider and render judgment under the first claim for refund as amplified and amended under the cause of action stated in the original petition and, also, in the amended petition; and that plaintiff is entitled to judgment for the overpayment of tax and interest resulting from the erroneous increase of income for 1917

through the disallowance by the commissioner of a portion of the interest paid by the receivers in that year.

■ The cause of action stated in the original petition was not based upon the refusal of the commissioner to compute the tax under section 210 of the Revenue Act of 1917. He allowed plaintiff's application for a determination of its tax under that section and made the computation accordingly. The case of Williamsport Wire Rope Co. v. United States, 63 Ct. Cl. 463; Id., 277 U. S. 551, 48 S. Ct. 587, 72 L. Ed. 985, is not, therefore, applicable. The statutes with reference to the filing of claims for refund and the bringing of suits upon disallowance thereof should not, in a case of this character, be so construed as to deprive a taxpayer of the right to go in court to recover an overpayment on a ground which was fully brought to the attention of the commissioner, and fully considered and decided by him, in connection with a claim for refund. Compare Illinois Terminal Co. v. United States, 53 F.(2d) 904, 73 Ct. Cl. 263; National Fire Insurance Co. v. United States, 52 F.(2d) 1014, 72 Ct. Cl. 517. Ordinarily where a claim or protest filed with the commissioner against a proposed increase of income through the disallowance of a deduction taken on a return would result in an additional tax, it would be necessary for the taxpayer to make payment and file a claim for refund before suit could be instituted. But where, as here, a claim for refund has been filed and one of the grounds thereof is allowed which produces an overpayment and other adjustments in the income are proposed by the commissioner, and the taxpayer amplifies and amends the claim for refund filed so as to draw into controversy in connection with its claim for refund the propriety of such adjustments and the commissioner disallows such claims and contentions, a suit may be legally predicated upon such claims and the action of the commissioner to recover the overpayment that would have resulted from the allowance by the commissioner of the claim for refund in part, but for his action with reference to other items specifically brought to his attention. If it were otherwise, taxpayers who file claims for refund, which are subsequently allowed on the grounds specified, would be denied the privilege which we think the statutes clearly intended to give to test the correctness of the commissioner's action upon a claim for refund where all the facts and grounds made the basis of the suit were brought to his attention and considered and decided by him.

In this case the decision of the commissioner in allowing the claim for computation of tax under section 210, as set forth in the first claim for refund, produced a reduction in the total amount of tax and interest theretofore collected in cash and by credit for 1917 of $85,298.65 and a total overassessment for 1917 of $179,235.37; but this reduction in the tax liability was wiped out by the action of the commissioner in increasing the income for that year through the disallowance of a portion of the deduction for interest taken on the return. The interest item was fully brought to the attention of the commissioner in connection with the claim for refund and the original petition filed in this case stated a cause of action for recovery of the overpayment of $85,298.65 based on the alleged erroneous increase of income by the commissioner in connection with the interest item. We think, therefore, that the suit was proper.

The balance of $61,074.80 sued for and included in the amended petition arises as a result of a further tax and interest exacted by the defendant as a result of the aforesaid action by the commissioner with reference to the interest item. In due course, after all the requirements had been complied with, the amended petition was timely filed for the additional payments totaling this amount.

Plaintiff is therefore entitled to recover $146,373.45, consisting of an overpayment of tax of $138,237.92 and overpayment of interest collected thereon of $8,135.53. Judgment will therefore be entered in favor of plaintiff for $146,373.45 with interest at 6 per cent. per annum on $67,311.97 from June 15, 1918, on $14,351.58 from January 28, 1920, on $2,583.28 from February 3, 1920, on $1,051.82 from February 23, 1924, on $55,522.55 from October 10, 1926, on $4,441.80 from November 10, 1926, and on $1,110.45 from December 14, 1926, to such date as the Commissioner of Internal Revenue may determine in accordance with the provisions of section 177 (b) of the Judicial Code, as amended by section 615 (a) of the Revenue Act of 1928 (28 USCA § 284 (b). It is so ordered.

BOOTH, Chief Justice, did not hear this case on account of illness and took no part in its decision.