## REYNOLDS v. DUREY et al.

District Court, N. D. New York.
Sept. 1, 1934.

Abram Zoller, of Little Falls, N. Y. (Hugh Satterlee and A. S. Lisenby, both of Washington, D. C., of counsel), for plaintiff.

Oliver D. Burden, U. S. Atty., of Syracuse, N. Y. (Henry R. Follett, Asst. U. S. Atty., of Syracuse, N. Y., and R. P. Hertzog and C. F. Pollock, Sp. Attys. for Bureau of Internal Revenue, both of Washington, D. C., of counsel), for defendants.

BRYANT, District Judge.

This is an action at law for the recovery of $117,135.22, representing income tax paid by or on behalf of the plaintiff for the calendar year 1920. The case was tried without a jury. Briefly, the facts are:

1. Plaintiff is an individual, who, up until September, 1920, had conducted, as sole proprietor, a retail furniture business at Troy and Albany, N. Y., for a period of thirty-five years. On September 29, 1920, he transferred the furniture business, which was operated largely on the installment basis, to R. C. Reynolds, Inc., a newly formed New York corporation, in consideration for the issuance to him, or his nominees, of all the authorized stock of the new corporation, except 3 shares of common stock required to qualify directors, consisting of 10,000 shares preferred stock and 10,000 shares of common stock, both of the par value of $100 per share. The new company, as a part consideration, assumed and agreed to pay all expenses, liabilities, and indebtedness accrued and accruing, including any and all assessments, taxes, liens, etc., under the federal and state income tax laws.

2. Plaintiff duly filed his individual income tax return for the calendar year 1920, in which he reported a taxable net income of $42,231.57, and upon which he reported a tax of $6,878.71. The tax was paid in installments during 1921. In said return he made no mention of the sale of the business, and no profit was reported. Subsequent to this filing, an audit was caused to be made by the Commissioner of Internal Revenue, and certain minor adjustments were made which resulted in an additional tax of $1,121.03, of which plaintiff was advised on or about Jan. 10, 1924. The additional tax was paid by the plaintiff. In the determination of said additional tax by the representative of the Commissioner of Internal Revenue, no profit or loss on the transfer of the business was included. Later, the Commissioner of Internal Revenue caused a further examination and audit of plaintiff's 1920 return to be made, and, on or about August 3, 1925, advised plaintiff that he had determined a deficiency of $247,-079.38. No appeal from this decision was taken to the Board of Tax Appeals. The additional tax, claimed by the Commissioner of Internal Revenue, resulted from an adjustment of plaintiff's inventory on September 29, 1920, and unrealized profits on installment sales. In the determination of this additional tax, no profit or loss on the alleged sale of the business was included. This additional tax was caused to be paid by plaintiff on or about December 9, 1925.

3. On or about January 4, 1927, plaintiff filed a claim for refund of $168,354.51, based on the ground that the increase in inventory and inclusion of unrealized profits on installment accounts were erroneous. No mention was made in said claim regarding any alleged profit or loss on the transfer of the business to R. C. Reynolds, Inc. In fact, up to this date, while the reports of the revenue agents, upon which the Commissioner of Internal Revenue based his determinations for additional taxes, and letters and briefs submitted by plaintiff, contained full details of the sale or transfer of the business from plaintiff to R. C. Reynolds, Inc., the Commissioner treated the incorporation of the business as resulting in no gain or loss.

4. Thereafter, and on or about August 26, 1927, the Commissioner of Internal Revenue determined that the unrealized profits on installment sales in the amount of $196,-124.84, which was a part of the amount upon which the deficiency tax was based and for which a refund was filed, should be entirely eliminated from taxable income, and, in lieu thereof, profit on the alleged sale of the business from R. C. Reynolds to R. C. Reynolds, Inc., in the amount of $167,677.72, should be included as taxable income, thus leaving an overassessment, as

the Commissioner of Internal Revenue determined, of $20,197.59. This amount was refunded to the plaintiff. In other words, while the Commissioner of Internal Revenue determined and conceded that plaintiff's income for 1920, as previously determined, should be reduced by the amount of $196,124.84, he then, and for the first time, determined that said reduction should be offset to the extent of $167,677.52 because of an alleged profit accruing to plaintiff through the incorporation of his business. This offsetting taxable income, which plaintiff contends should not have been determined, is the basis of the disputed amount of tax.

There are two questions in issue.

■ First. Did plaintiff, as a matter of law or fact, receive any taxable profit from the exchange of his business for the stock of the corporation?

Under the Revenue Act of 1918, § 202 (b), 40 Stat. 1060, the exchange was taxable only if the shares had "a fair market value." Not only is this the expression of the statute, but it is also the construction adopted by the regulations (Reg. 45, §§ 1563 and 1566, 1920 Edition).

The facts negative any "fair market value." It was a one-man corporation. The corporation took assets with an express assumption of liabilities in an indefinite amount and some of an undetermined character. (Exhibit 1, Exhibit A.) The good will of the business, which formed a large percentage of the intrinsic worth placed upon the business by the Commissioner, was not in any way protected. As said before, this was a one-man business. The plaintiff had built it up through thirty-five years of connection with, and service to, it. His personality, reputation, acquaintance with customers, and connection with the business was, in reality, the good will of the business. The corporation had no assurance that this connection and service would continue.

The stock was not listed, and never was offered to the public. There were no sales, except a few sales to employees under contracts whereby the title to the stock remained in the plaintiff until paid for out of dividends. These sales, if made under conditions upon which market value may be predicated, will not avail defendant in this case, because they were made at a loss instead of a gain. The facts in this case lead to the conclusion that the shares had no

market value within the meaning of the statute.

■ The Commissioner of Internal Revenue recognized the fact that there were no sales, no offers to sell, and no offers to buy. However, he insisted that, since the property, or at least some of it, had a market value, the stock must have a value at least equal to the intrinsic worth of the property. He proceeded to determine the value of the stock by appraising, according to his own methods, the property of the corporation, and determined that such value, for the purposes of section 202 (b), may be deemed the fair market value. "The federal courts, however, have refused to sanction this method when it was applied for the purpose of establishing a gain resulting from a transfer of property to a corporation in exchange for the shares of its stock, there being no market for the shares." Tsivoglou v. U. S. (D. C.) 27 F.(2d) 564, 566; affirmed (C. C. A.) 31 F.(2d) 706.

The conclusions I have reached seem to be in accord with the holdings of the court under similar circumstances. Schoenheit v. Lucas (C. C. A.) 44 F.(2d) 476; Mount v. Commissioner (C. C. A.) 48 F.(2d) 550; Heafey v. Allen (D. C.) 34 F.(2d) 941; Bourn v. McLaughlin (D. C.) 19 F.(2d) 148; O'Meara v. Commissioner (C. C. A.) 34 F.(2d) 390.

Even though the Commissioner's procedure in ascertaining value be sanctioned, it would make no difference in the decision of this issue, because the evidence conclusively overcomes any presumption of correctness. It is not necessary to set forth the figures or computations used in reaching this conclusion. Suffice it to say that the plaintiff sustained the burden of establishing that the intrinsic worth of the business at the time of incorporation was not in excess of $1,051,917.25, its conceded 1913 value.

■ Second. Is plaintiff's claim for refund sufficient, as a condition precedent, to the maintenance of this action?

As before stated, the Commissioner, in 1925, determined an additional tax against the plaintiff for the year 1920 of $247,079.-38, based upon increase of inventory and unrealized profits on installment sales. At that time, no determination of any loss or gain from the transfer was made. The taxpayer filed a claim for refund against this additional tax, setting forth his grounds for believing the additional assessments erroneous. The Commissioner ruled that the

amount of $196,124.84, taxed as unrealized profits on the installment sales, was erroneous, and admitted that the tax thereon should be returned. Then, for the first time, he determined that taxpayer realized a taxable profit of $167,677.72 on exchange of property for stock, and that the tax thereon should be offset against the refundable tax. The plaintiff filed no further claim of refund.

It is now contended by defendants that, inasmuch as the Commissioner of Internal Revenue, after claim for refund was filed, determined a tax should be assessed on a different theory and on grounds not previously advanced, the plaintiff is barred from recovery in this action because he did not file a second and further claim for refund.

"The statutes with reference to the filing of claims for refund and the bringing of suits upon disallowance thereof should not, in a case of this character, be so construed as to deprive a taxpayer of the right to go in court to recover an overpayment on a ground which was fully brought to the attention of the commissioner, and fully considered and decided by him, in connection with a claim for refund." Central Iron & Steel Co. v. U. S. (Ct. Cl.) 4 F. Supp. 113, 136. Judge Littleton's words are applicable to the facts in this case.

The Commissioner, at the time he made his decision, had before him the original return, showing the taxpayer claimed no profit or loss on the transfer; at least three reports of his agents' examination of taxpayer's books, which reports set up in detail the transfer of the business; protests and briefs submitted both before and after the filing of the claim; and the claim of refund. The claim of refund not only expressly set forth opposition to the grounds upon which additions to net income were made, but also the facts with respect to the transfer. At least one of the protests filed, the one dated December 12, 1924, contended that the stock received in transfer had no market value and that the market value of the assets taken over were less than cost.

These papers contained sufficient facts to draw into controversy, in connection with the claim of refund, the correctness of the Commissioner's decision. Prior to the Commissioner's action on the refund claim, he had not only every available fact but also taxpayer's contention that no profit was realized.

The facts warrant the conclusion that plaintiff complied sufficiently with the requirements of article 1304 of Regulation 65 under the 1926 Revenue Act to predicate an action for recovery of overpayment. Memphis Cotton Oil Co. v. U. S. (Ct. Cl.) 59 F.(2d) 276, affirmed 288 U. S. 62, 53 S. Ct. 278, 77 L. Ed. 619; Bemis Bros. Bag Co. v. U. S., 289 U. S. 28, 53 S. Ct. 454, 77 L. Ed. 1011; Central Iron & Steel Co. v. U. S. (Ct. Cl.) 4 F. Supp. 113; McKesson & Robbins, Inc., v. Edwards (C. C. A.) 57 F.(2d) 147.

Plaintiff is entitled to judgment for $117,135.22 and interest thereon from December 9, 1925.