LEHIGH VALLEY COAL SALES CO., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 19751.   Promulgated April 12, 1929.

*Charles B. McInnis*, for the petitioner.
*Stanley Suydam, Esq.*, and *O. J. Tall, Esq.*, for the respondent.

**OPINION.**

Love: In regard to the first issue—(a), counsel for the respondent concedes " that the sum of $20,610.54 (erroneously quoted as $20,-614.54), being a contingent liability in 1918, should not have been deducted from petitioner's invested capital for the calendar year 1918." Accordingly we find for the petitioner on this issue.

In regard to the second issue—(b), counsel for the respondent argues that it is neither proper nor necessary for this Board to take into consideration this voluntary payment by the petitioner of $17,298.79, and that the proper application of this credit is solely a matter for adjustment by the collector of internal revenue at New York. We do not agree with that contention.

We cite *Peerless Woolen Mills*, 13 B. T. A. 1119, not because it offers an exact precedent for the case at bar, but because the exhaustive discussion of its several issues, both direct and collateral, and the reasoning upon which that opinion was based, bear directly upon and illuminate such controversies as that now before us for determination. Briefly, the Board there held that an appeal once properly before it in connection with a deficiency determined and declared

by the Commissioner, it was clearly within its province and power to examine into and decide all issues presented for its consideration. Therefore, it is within the jurisdiction of this Board not only to redetermine the taxpayer's deficiency, but to establish as well his tax liability. In the instant case the petitioner concedes that subsequent to the filing of this appeal, the collector has credited the payment of $17,298.79 in question, made in 1921, together with three other payments, against the additional assessment of $50,866.92; but it is contended that it is the right of the taxpayer to have such payments taken into account by this Board in its determination of the taxpayer's liability. We are of the opinion that since the Commissioner has determined and is claiming a deficiency, this taxpayer is entitled to have the Board determine whether the deficiency is as determined by the Commissioner or a lesser amount. We, therefore, on this issue sustain the principle contended for by the petitioner, although it is conceded that the situation premised has been avoided in this case by the proper, though apparently delayed, credit upon the books of the collector of internal revenue in New York.

The third issue—(c)—has to do with the question of the reduction of invested capital by the computation and deduction from earnings available for dividends of the so-called "tentative tax" upon such earnings. This question has been heretofore so often passed upon by this Board that it would be supererogatory to do more than refer to prior decisions, the earliest of which is *L. S. Ayers & Co.*, 1 B. T. A. 1135, and to the extended discussion in *All America Cables, Inc., et al.*, 10 B. T. A. 213, and the cases therein considered. In all of these cases the Board denied the propriety of the theory of the "tentative tax." In two recent court decisions rendered in January, 1929, this action of the Board has been affirmed. *Blair* v. *Ragley Lumber Co.* (C. C. A., 5th Cir.), 30 Fed. (2d) 683, and *Commissioner of Internal Revenue* v. *Pittsburgh Knife & Forge Co.* (C. C. A., 3d Cir.), 30 Fed. (2d) 522.

The summary of the Commissioner's computation is as below:

| Dividends paid | | Available earnings | Paid out of surplus | Number of days effective | Adjusted average |
|---|---|---|---|---|---|
| Date | Amount | | | | |
| Apr. 1 | $390, 584. 00 | $597, 242. 70 | None. | | $277, 245. 65 |
| May 16 | 945, 256. 84 | 505, 280. 05 | $439, 976. 79 | 230 | 43, 043. 21 |
| Feb. 1 | 390, 642. 00 | 305, 257. 38 | 85, 384. 62 | 184 | |
| Invested capital decrease | | | | | 320, 288. 86 |

We hold the result of this computation erroneous because based upon an error of principle, and sustain the petitioner upon this issue.

From a consideration of the evidence introduced in connection with the fourth issue (d), it appears that prior to December 31, 1917, the

petitioner had overpaid its real estate and personal property taxes in the amount of $2,228.14, of which $2,165.34 was recovered in 1918 and $62.80 in 1919. The petitioner contends that this amount was paid under protest and since the amounts were recovered under decisions of the Supreme Court of the State of Illinois, they formed in fact a part of the petitioner's invested capital at December 31, 1917. Counsel for the respondent contends, on the other hand, that these amounts, among others, were properly deducted from the petitioner's invested capital at that time and that they should be included as income in the years in which recovery was had, asserting "that the analogy between this situation and that in which a question of a bad debt presents itself is perfect." On our part, we see nothing even remotely analogous in the two cases, and we are bound to find for the petitioner. The Board has heretofore considered such questions, notably in *United States Trust Co. of New York*, 13 B. T. A. 1074, where we held that certain Spanish War taxes paid to the United States Government between 1898 and 1910, and recovered in 1926, formed a part of the taxpayer's invested capital for the *interim*. In that case the Commissioner confessed error in reducing earned surplus by reason of such payments. To the same effect, but of somewhat different tenor, is our decision in *Philip C. Brown*, 10 B. T. A. 1122, where we held that a state inheritance tax paid in 1922 under a law which was later held to be unconstitutional, and which tax was refunded in 1925, was not a legal deduction from gross income in 1922. Obviously, then, it could not be income in 1925 when the recovery was had, although that was not the issue presented to the Board for consideration.

In the instant case, the amount of state taxes paid prior to December 31, 1917, and deducted on the returns for the years for which the payments were made, was paid under protest and in compliance with unconstitutional legislation. Hence, such taxes were illegally demanded, paid and deducted, and therefore void *ab initio*. That being true, it follows inevitably and in conformity with our decisions above cited, that the amounts so paid and deducted formed a part of the petitioner's taxable income in the years in which the unwarranted deductions were made, on which it was, in fact and in law, due an income tax. The petitioner paid a less amount of Federal taxes in those years than it legally owed, and amended returns or additional assessments were available to correct the error; but the fact that state taxes were erroneously paid in those years does not render them taxable income in a subsequent year in which they were refunded.

The petitioner contends that the correct amount of taxes accrued against the Lehigh Valley Coal Sales Co. at December 31, 1917, was $18,600.20, and that the correct amount of taxes accrued against the Manitowoc Land & Fuel Co. at the same date was $35.84; and that

therefore the amount by which the petitioner's invested capital should have been reduced at December 31, 1917, was $18,636.04. With this computation the respondent agrees, provided that we find ourselves unable to support his contention. We therefore hold for the petitioner upon this issue, in the amount last mentioned. These items may not have been taxes at all, but a part of the cost of coal. See *Lash's Products Co.* v. *United States,* 278 U. S. 175.

Concerning the fifth issue—(e), it follows as a corollary to what we have said above, that state taxes accrued in 1918 are a proper and lawful deduction in that year and in none other.

There is some doubt in the mind of the Board whether all these items considered here as taxes are properly so classified. In some instances they appear to have been amounts paid to or received from lessees or lessors in adjustments required under the various leases. In that case they would seem to be of the nature of adjustments of rent rather than the payment of or recovery of taxes; but as either rents accrued or such taxes accrued are proper deductions, that point is not material to the discussion and decision of the principles considered and decided herein.

*Judgment will be entered under Rule 50.*