## ILLINOIS TERMINAL CO. v. UNITED STATES.

### No. M–75.

Court of Claims.
Dec. 7, 1931.

Chester A. Gwinn, of Washington, D. C. (Humphreys & Gwinn, of Washington, D. C., on the brief), for plaintiff.

Charles B. Rugg, Asst. Atty. Gen. (Joseph H. Sheppard, of Washington, D. C., on the brief), for defendant.

Before BOOTH, Chief Justice, and LITTLETON, WHALEY, WILLIAMS, and GREEN, Judges.

LITTLETON, Judge.

The plaintiff is a railroad corporation which was under federal control from January 1, 1918, to February 29, 1920. It did not enter into a so-called "standard agreement" with the Railroad Administration for the federal control period. Final settlement with the United States Railroad Administration was effected September 21, 1922, resulting in the payment to plaintiff of a balance of $50,000. In this final settlement compensation for the use of plaintiff's properties for the period of federal control was determined at the rate of $350,000 a year. The Interstate Commerce Commission, on June 7, 1923, certified to the President that $390,818.05 represented the so-called "standard agreement." Plaintiff received from the government $390,818.05, representing the "standard return," for the use of its properties under federal control, and included this sum in its tax return for 1922, and paid the total tax shown by the return in quarterly installments on March 14, June 13, September 15, and December 15, 1923. The Commissioner of Internal Revenue determined and held that the said sum of $390,818.05 accrued and was income for the calendar years 1918, 1919, and 1920. Plaintiff instituted a proceeding before the United States Board of Tax Appeals testing the correctness of the Commissioner's determination for the three years mentioned, in so far as it held that the amount of $390,818.05 was income for those years instead of 1922. The determination of the Commissioner was upheld by the Board of Tax Appeals, which resulted in deficiency assessments for 1918, 1919, and 1920, which assessments were thereafter duly paid. On November 24, 1926, plaintiff filed a claim for refund for the calendar year 1922, setting forth as specific grounds therefor the erroneous inclusion in taxable income for that year of the said sum of $390,818.05, as "standard return." April 15, 1927, the Commissioner of Internal Revenue notified the plaintiff of his final determination for 1922, which determination excluded from taxable income the item of $390,818.05, being the amount of the "standard re-

turn" above mentioned, increased the taxable income by the amount of $2,962.75, excessive depreciation claimed in the return, and included in taxable income for 1922 an item of $341,146.05, representing a portion of the compensation received by the plaintiff from the Railroad Administration for the use of its railroad properties during the period of federal control in excess of the "standard return" of $390,818.05. This determination resulted in the finding by the Commissioner of an overpayment of $5,838.66, which was duly refunded to plaintiff. Thereafter, and on April 22, 1927, plaintiff filed with the collector of internal revenue at Springfield, Ill., a claim for refund of $46,437.37, based upon the alleged erroneous addition to income for that year of the item of $341,146.05, upon which claim no action has been taken by the Commissioner of Internal Revenue.

Section 3226 of the Revised Statutes, as amended by section 1113(a) of the Revenue Act of 1926 (26 USCA § 156), provides, so far as material here, as follows: "No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the commissioner renders a decision thereon within that time, nor after the expiration of five years from the date of the payment of such tax, penalty, or sum, unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates."

It will be observed that no action has been taken by the Commissioner on the final claim for refund filed April 22, 1927, which is the claim upon which plaintiff relies. The tax for 1922, a portion of which plaintiff seeks to recover, was paid in four installments on March 14, June 13, September 15, and December 15, 1923, and this suit was not instituted until February 21, 1931, which was more than five years after the dates on which these payments were made. This is the ground upon which the demurrer is based.

The defendant argues that, since the correct amount of tax for the year 1922 was finally determined by the Commissioner of Internal Revenue to be $5,838.66 less than the total amount of tax paid by the plaintiff for that year, which determination it was his duty under the statute to make, and since the plaintiff did not institute this suit within six months after the filing of its claim for refund on April 22, 1927, nor within five years after the date on which such tax was paid, the petition should be dismissed. In other words, it is the contention of the defend-

ant that, when there is a payment of a tax for a particular taxable year, the date or dates on which such payments are made are not changed for the purpose of suit, because the Commissioner of Internal Revenue may in his final determination in respect of the net income and the tax liability for such year exclude certain items of income which may have been included in the amount upon which the tax so paid was computed and include in income certain other items of income for such year upon which the correct tax when finally computed thereon equals or exceeds the total amount of tax theretofore paid; that there is no provision in the law and no authority for the proposition that, when items of income reported are excluded and other items of income are included, there is a credit of that portion of the tax paid on such excluded item to the tax due upon the item of income included in the determination, but not originally reported, so as to make the date of payment of tax computed on the last-determined item of income the date on which the Commissioner notifies the taxpayer of his final decision.

The plaintiff points out that a specific claim for refund was filed November 24, 1926, on the ground that, since the United States Board of Tax Appeals had held that the amount on the standard return of $390,818.05 was income for 1918, 1919, and 1920, the period of federal control, and this amount had already been included by the taxpayer as income for 1922 in the original return filed for that year, it should be eliminated from 1922 income; that this was a clear-cut point which was not debatable in view of the Board's decision; that the Commissioner in his determination of April 15, 1927, recognized the validity of this credit, and excluded $390,818.05 from plaintiff's income for 1922, which operated to reduce the plaintiff's tax liability as reported in the return by the amount of $48,852.26; that, instead of refunding $48,852.26, the Commissioner refunded only $5,838.66, on the ground that excess depreciation of $2,962.75 had been claimed in the return, which increased the tax $370.34, and on the further ground that plaintiff had received another item of income of $341,146.05, representing compensation for the use of plaintiff's railroad properties during the period of federal control in excess of the standard return of $390,818.05. It therefore contends that, when the Commissioner allowed the contention that the item of $390,818.05 should be excluded from income and reduced the income by that amount, there was no further action to be taken by the

plaintiff on that claim for refund; that the Commissioner's action in offsetting against that allowance the sum of $341,146.05, representing compensation for the use of plaintiff's properties in excess of the "standard return," thereby diminishing the refund which would otherwise have been made by the sum of $42,643.26, the amount of tax computed upon the item of $341,146.05 was, to all intents and purposes, the collection of that much tax by a credit; that the addition to income of the item of $341,146.05 necessarily involved an increase in tax of $42,643.26; and that this additional tax was discharged by the summary action of the Commissioner in offsetting the item of income against an original item which should have been excluded from income, thereby reducing the refund in the amount of $42,643.26. Finally, it is insisted by plaintiff that it would have been a futile action for the Commissioner to have scheduled an overpayment of $48,852.26 on the item of the "standard return" and a deficiency of $42,643.26 on the item of $341,146.05, and that he simply offset one adjustment against the refunded and net overpayment; that such offset, however, was no less a payment of $42,643.26 of tax than it would have been had the two items been handled at different times.

We find no sufficient basis for the conclusion that, when the commissioner finally determined the total amount of tax due for 1922, he was offsetting or crediting the increase in the correct tax which resulted from the inclusion of an item of income not reported in the return against the decrease in the tax resulting from exclusion of another item which had been reported, and that, consequently, the tax was not paid within the meaning of the statute until the Commissioner finally determined the correct amount thereof. The Commissioner, as is usual in such cases, took up the whole subject of plaintiff's correct income and correct tax for the year 1922, and determined that the amount of this so-called "standard return" of $390,818.05 should not have been included in the income for that year, but that there should have been included the sum of $341,-146.05, received by the plaintiff as compensation for the use of its properties over and above this "standard return." He fixed the amount of plaintiff's income at a sum in accordance with these changes, and, having computed the tax accordingly, found that plaintiff had overpaid its tax for 1922 in the amount of $5,838.66, which was duly refunded. The Commissioner did not first reduce

the tax and then increase it; he merely determined the correct amount due the government by the plaintiff upon the correct net income. He made no new assessment. He simply made a new calculation of the tax, and, as often happens in such cases, discovered in his judgment that one item of income ought to be stricken out and another included. This action, being entirely with reference to the tax for one taxable period, would not have the effect of changing the date of payment of the tax or any portion of it theretofore paid by the plaintiff in respect of its tax for such taxable year. P. L. Mann v. United States, 44 F.(2d) 1005, 71 Ct. Cl. 31; American Hide & Leather Co. v. United States, 48 F.(2d) 430, 71. Ct. Cl. 114. The changes made by the Commissioner in the nature of the items going to make up the correct net income for the taxable year and the tax properly to be computed thereon were not offset as one debt is offset against another or a counterclaim against the claim of another party, or as a credit on a tax paid for one year against a tax paid for another. From the beginning to the end, there was but one matter to be determined, and that was the correct amount of plaintiff's tax, and the basis for this determination was the amount of plaintiff's correct net income. The tax had been assessed at a certain sum and paid accordingly. The Commissioner reviewed the matter, and in his final determination decided that there had been assessed and paid $5,838.-66 in excess of the correct tax due, which amount was duly refunded. The Commissioner otherwise rejected the claim for refund.

Plaintiff argues that it could not have brought suit for $42,643.26 upon the rejection by the Commissioner on April 15, 1927, of its first claim for refund filed November 24, 1926, representing the tax which would have been refundable in excess of the amount actually refunded, less the amount of tax resulting from the disallowance of the item of depreciation, if the Commissioner had not included in income the item of $341,-146.05 not reported in the return, because the ground of that claim for refund was the exclusion from income of the item of the "standard return" of $390,818.05, with which contention the Commissioner agreed. We need not decide whether in the circumstances of this case this suit could be maintained if it were based upon the action of the Commissioner on April 15, 1927, with reference to the claim filed November 24, 1926, since this suit was not instituted until more than

two years after such action by the Commissioner.

It is further insisted by plaintiff that, up to the time of the Commissioner's final determination on April 15, 1927, it could have filed no proper claim for refund on account of the inclusion of the disputed item of $341,146.05; that the position of the defendant in this case, if sustained, would leave taxpayers completely at the mercy of the Commissioner, and would destroy the complete system of remedial legislation designed to allow taxpayers a judicial review of arbitrary and illegal tax exactions; that it would also break down and destroy the limitations prescribed by Congress which are intended to give taxpayers a reasonable period of time within which to prosecute in the executive department and in the courts the remedies prescribed by law to correct illegal and wrongful actions of the Commissioner; that a case might arise for certain years where waivers had been filed, but, otherwise, similar to the case at bar, in which under the law the taxpayer would be remediless. Whether the position of the defendant in this case would lead to the result claimed by the plaintiff in some other case under the circumstances mentioned by plaintiff we need not here discuss or determine. It is sufficient to say that the court is not authorized to engraft a new provision on the law, and it may not be said that the system of remedial legislation designed to allow taxpayers a judicial review of erroneous and illegal tax exactions is destroyed if it should be found in some case that the taxpayer may not recover because of some extremely exceptional contingency that may have occurred under the taxing acts. Such a situation is not present here, for this plaintiff was free under section 3226, Rev. St. as amended by section 1113 (a), Revenue Act of 1926 (26 USCA § 156), to institute this suit on October 23, 1927, which was six months after the date on which the last claim for refund of April 22, 1927, was filed. The date of October 23, 1927, was almost five months before the expiration of five years after the date of payment of the first installment of tax for 1922, on March 14, 1923. Suit on the subsequent installments could have been instituted at a much later date. This suit was not instituted, however, until February 21, 1931. The hardship in the case at bar is no greater than often happens when the statute of limitations is applied.

It follows that the demurrer should be sustained and the petition dismissed, and it is so ordered.