CENTRAL UNITED NATIONAL BANK, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 69212, 71063. Promulgated November 27, 1935.

' *Carmi A. Thompson, Esq.*, and *Orville Smith, Esq.*, for the petitioner.

*Clay C. Holmes, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: These proceedings were brought to redetermine deficiencies in the income taxes of the petitioner for the years 1929 and 1930 in the sums of $10,131.52 and $8,620.76, respectively.

The facts were stipulated and are substantially as follows:

The petitioner is a national banking association duly organized under the laws of the United States, located at Cleveland, Ohio, with its principal office at 308 Euclid Avenue, Cleveland, Ohio.

For the calendar years 1928, 1929, and 1930 the petitioner accrued on its books and claimed as deductions on its income tax returns for said respective years, the amounts of personal taxes charged against it on the county treasurer's duplicate of Cuyahoga County, Ohio, for the said respective years, in the following amounts, to wit:

| Year | Original assessment |
|------|---------------------|
| 1928 | $116,083.23 |
| 1929 | 153,507.89 |
| 1930 | 165,520.15 |

These taxes were not paid as assessed and billed by the proper taxing authorities of Cuyahoga County, Ohio, before the close of each said respective calendar year. As hereinafter appears, the petitioner subsequently instituted certain equitable suits for injunctive relief in the District Court of the United States for the Northern District of Ohio, Eastern Division, and in the Court of Common Pleas of Cuyahoga County, Ohio, questioning whether or not the said taxes were illegally discriminatory.

For the years in controversy, as well as prior and subsequent thereto, the petitioner kept its books of accounts and filed its returns on the accrual basis of accounting.

On August 5, 1929, the petitioner filed a bill of complaint against Alex Bernstein, treasurer of Cuyahoga County, in the said Federal court for the purpose of enjoining him from collecting personal taxes charged against the petitioner for the year 1928. On August 19, 1929, the motion for an injunction was denied and on November 21, 1929, a stipulation between counsel was filed, agreeing to defer state action pending a decision on a similar case in the District Court of the United States for the Southern District of Ohio, Northern Division, brought by the Huntington National Bank and involving the same question. On February 26, 1931, the suit was dismissed without prejudice.

On May 1, 1931, the petitioner filed a suit in the Court of Common Pleas for Cuyahoga County restraining the then county treasurer from collecting personal taxes charged against it for the years 1928, 1929, and 1930. During the pendency of this suit an injunction was granted in the *Huntington National Bank* case and the Federal court held, in effect, that personal taxes assessed against national banks in Ohio were illegally assessed because of discrimination between national banks and other moneyed capital coming into competition with the national banks (45 Fed. (2d) 213). The *Huntington National Bank* case was appealed to the Circuit Court of Appeals for the Sixth Circuit, where it was reversed, the case being decided, on June 29, 1932, in favor of the county treasurer. (59 Fed. (2d) 479.)

For some time prior to the decision of the district judge in the *Huntington National Bank* case, negotiations had been carried on between the petitioner and the taxing officials of Cuyahoga County, Ohio, looking to an adjustment of the petitioner's personal taxes for the years 1928, 1929 and 1930, and, after the decision of the district judge and prior to the reversal of the decision by the Circuit Court of Appeals, the petitioner had reached a basis of compromise with

the taxing officials of Cuyahoga County, under which an adjustment was to be made on the following basis:

| Year | Original assessment | 1932 settlement |
|------|---------------------|-----------------|
| 1928 | $116,083.23 | $46,433.29 |
| 1929 | 153,507.89 | 61,403.16 |
| 1930 | 165,520.15 | 82,760.07 |

Carrying into effect the compromise so reached, the Court of Common Pleas in the injunction suit against the county treasurer entered its order finding that the petitioner owed the county treasurer the respective amounts indicated in the above schedule as 1932 settlement. The court order required the county treasurer to accept the amounts in full for the taxes to be paid for the several years, and payment thereof was made on February 1, 1932.

In the journal entry recording the decision of the court in the last mentioned case, reference is made to a certain action brought by the petitioner in the United States District Court for the Northern District of Ohio, Eastern Division, against Walter E. Cook, in which the petitioner sought to recover personal taxes paid by the petitioner for the year 1927, and in which court order it was stated that the petitioner would dismiss its action in that court.

In its income tax return for the year 1932, the petitioner reported as income to it in the said year, the amount of savings on the settlement of its personal taxes for the years 1928, 1929, and 1930, as set forth in the above settlement schedule, such savings being in the sum of $244,514.75. Petitioner's income tax return for the year 1932 did not show any net taxable income.

In determining the petitioner's taxable income for the years 1929 and 1930, the respondent allowed as deductions $61,403.16 for the year 1929 and $82,760.07 for the year 1930. These amounts represented payments made by the petitioner for personal property taxes as determined by the compromise agreement effected in 1932.

The petitioner contends that for the years in question it accrued properly on its books the full amount of personal taxes assessed against and billed to it, that it so reported to the Comptroller of the Currency, as required by section 5211, U. S. Revised Statutes, and that on December 31 of the respective years it had not challenged the correct amount of such taxes. It contends further that after the decision of the Circuit Court of Appeals holding the tax valid it correctly reported as income in 1932 the saving effected by the compromise.

The respondent's theory is that simultaneously with making the accruals on its books the petitioner protested the correctness of the

taxes; that the various actions brought by it were for the purpose of correcting a mistake and that, therefore, the amount of taxes as paid through compromise should relate back to the years for which they were due.

The facts do not support the respondent's position. As to each year, the petitioner entered on its books correct accruals of the personal taxes which the taxing authorities of Cuyahoga County had determined it was compelled to pay. All of the events necessary to fix the amount of the tax and the liability of the taxpayer to pay it had occurred within the respective taxable years. *United States v. Anderson*, 269 U. S. 422. Subsequent to December 31 of each year, it attacked the assessment of such taxes as being illegally discriminatory. It did not question the correctness of the amount assessed or the valuation employed. Cf. *Inland Products Co.* v. *Blair*, 31 Fed. (2d) 867; *Brooklyn Union Gas Co.*, 22 B. T. A. 507. Thus, it was not a matter of correcting an error, but a denial of the petitioner's liability for any tax such as was imposed.

In Ohio, under state law as it stood in the taxable years, the day preceding the second Monday in April was the date of tax incidence. *John H. Hord*, 33 B. T. A. 342. The Revenue Act of 1928, section 23 (c), allowed a deduction of the amount of taxes "paid or accrued." Petitioner accrued the taxes due from it on its books in the respective years and deducted them in its returns. This action was in accord with its legal rights. Later, in 1932, by compromise petitioner effected a saving in the amount of taxes to be paid. The Circuit Court of Appeals subsequently in the same year held the tax valid. Accordingly, petitioner, by reason of the compromise, paid less tax than was due. The amount of this saving was income to petitioner and was reported as such in 1932, the year in which it arose. *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417. This action conformed to law and gave effect to the action of the Circuit Court of Appeals.

Under the facts in the case at bar we believe that the method employed correctly reflects the petitioner's income as computed under the accrual basis of accounting. See *Continental Baking Co.*, 30 B. T. A. 354; affd., 77 Fed. (2d) 119; *Russell-Miller Milling Co.* v. *Helvering*, 69 Fed. (2d) 392; affd., 27 B. T. A. 405.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

Morris dissents.

---

Black, dissenting: In my judgment the Commissioner should be sustained in his contentions in this proceeding.

Undoubtedly one on the accrual basis must accrue on his books taxes in the year when such taxes accrue and the petitioner was

entirely justified in accruing the amounts which it did in the respective taxable years, but now that we have the tax years before us on appeal, it seems to me that we should adjust the accruals in accordance with the true tax liabilities for the respective taxable years as finally determined.

To treat the matter as petitioner contends would ordinarily work a clear distortion of income. In the instant case petitioner is willing to add to income for 1932, $244,514.75, but to do so works no hardship on petitioner because it evidently had heavy losses in that year which absorb this $244,514.75. That fact is shown by the finding in the majority opinion, which says:

In its income tax return for the year 1932, the petitioner reported as income to it in the said year, the amount of savings on the settlement of its personal taxes for the years 1928, 1929, and 1930, as set forth in the above settlement schedule, such savings being in the sum of $244,514.75. Petitioner's income tax return for the year 1932 did not show any net taxable income.

But suppose 1932 had been a normal year with a good healthy income to petitioner. Doubtless under such circumstances petitioner would contend strongly against adding $244,514.75 to income and would assert that to do so would be a clear distortion of its income.

Petitioner would doubtless contend that 1928, 1929, and 1930 should be adjusted in accordance with the taxes finally agreed upon and in so contending I think petitioner would find support in Board cases. See *Joseph V. Horn*, 23 B. T. A. 1131; also *Philip C. Brown*, 10 B. T. A. 1122. In the latter case the Board quoted with approval from *Producers Fuel Co.*, 1 B. T. A. 202, as follows:

While it appears that at the end of the year 1920 this taxpayer estimated its liability under the breached contracts with appropriate accuracy and set the sum up on its books of account and then made its income and profits-tax return in accordance with such books, we have now before us a review of that income and profits-tax return and in making such review it is our duty to consider not only the facts known and recorded at the close of December, 1920, but also those same facts as modified by subsequent events. These subsequent events have developed the fact that the damages and losses sustained by the taxpayer on account of the breach of the Monongahela contract were settled for the sum of $5,500, and that the damages and losses sustained by the taxpayer on account of the breach of the Campbell contract were finally determined and settled for the sum of $29,742.40. With these facts before us, and for the purpose of determining the final net taxable income of the taxpayer for the year 1920, the amounts of damages and losses as finally determined must now be substituted for the estimate originally made, and in place of the deductions claimed by the taxpayer in his return and disallowed by the Commissioner the losses and damages as finally settled must be allowed as the deduction contemplated by the law.

It may be argued that in both the *Horn* and *Brown* cases, the taxpayer was on the cash basis, but I think that makes no difference.

Both cases stand for substantially this proposition: That, if in 1934, for example, a taxpayer paid $10,000 taxes, but contends that he did not owe that much and in 1935 gets a refund of $2,500, he must adjust his deduction for taxes in 1934 and make it only $7,500 instead of $10,000, as originally deducted.

I think one on the accrual basis would make no difference. If under such circumstances he accrued $10,000 in 1934 but arrived at a compromise settlement in 1935 of $7,500 for his 1934 taxes, he would have to go back and adjust his accruals for 1934 to a deduction of only $7,500.

I do not think that the authorities cited in the majority opinion in support of the conclusion therein reached are in point. For example, *Continental Baking Co.*, 30 B. T. A. 354, is cited. In that case, the corporation, keeping its accounts on the accrual basis, in July 1925 filed a capital stock tax return in which it claimed exemption from the tax as not being engaged in business. In 1929 the Commissioner denied the claimed exemption and in that year the tax was paid. In its income tax return for 1929 the corporation took a deduction for the amount of tax which was paid. The Board held that the tax accrued in 1925 and was not a proper deduction from income in 1929, to one on the accrual basis.

That is exactly the principle for which I contend in the instant case. Whatever taxes the petitioner owed the State of Ohio for the taxable years 1929 and 1930, the two taxable years which we have before us, were accruals for those two respective years. Petitioner accrued on its books, and took a deduction therefor on its income tax returns, $153,507.89 taxes for 1929 and $165,520.15 for 1930. Petitioner did not pay these amounts, but, on the contrary, in 1932 settled for $61,403.16 for 1929 and $82,760.07 for 1930. Therefore it is my opinion that the proper accrual for taxes in 1929 is $61,403.16 and for 1930 is $82,760.07, and, now that we have the years before us on appeal, that is the amount which we should allow petitioner as accruals for those years.

It is a fact well known to all that the Commissioner makes refunds to taxpayers of estate taxes which have been overpaid in prior years and taken as a deduction by the estate. It has never been held by the Board or the courts, so far as I know, that the principal amount of these refunds is taxable income to the estate. If any interest is paid on the refunds, that is taxable income but not the principal of the refund itself. Yet under the doctrine of the majority opinion as I understand it, if in these refund cases the Commissioner could show that the tax-paying estate had taken deductions from its income tax returns of the estate taxes paid in the prior years, he should

594

hold the refunds to be income to the taxpayer in the year in which such refunds are made. That it seems to me would be wholly unsound and that is why I think the majority opinion is unsound, and I respectfully dissent from such view.

SEAWELL and ARNOLD agree with this dissent.