The E. B. Elliott Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 97330.   Promulgated September 12, 1941.

*H. A. Mihills, C. P. A.*, for the petitioner.
*F. L. Van Haaften, Esq.*, for the respondent.

OPINION.

KERN: █ The first issue for our consideration is whether advance payments on advertising contracts to be performed after the taxable year are income to petitioner in the year of receipt. Petitioner contends that the prepayments represented advances for the purpose of defraying initial costs of erection of structures and were income only in the year petitioner performed the services for which the advance payments were made. Respondent argues that petitioner was not restricted in its use of the prepaid amounts and that the payments were income to petitioner in the taxable year.

The contracts under which petitioner received the initial payments did not restrict the use of the prepaid funds by petitioner. Nor did the agreements contain any provision with respect to refund of the payments. The payments were in the nature of advance rentals and were income in the year of receipt. *Edwin B. De Golia*, 40 B. T A. 845; *O'Day Investment Co.*, 13 B. T. A. 1230; *Renwick v. United States*, 87 Fed. (2d) 123. Where the initial payments may be used by the taxpayer without restriction, the fact that the taxpayer is on the accrual basis does not prevent the prepayments from being included in gross income in the year of receipt. *Commissioner v. Lyon*, 97 Fed. (2d) 70. We hold that the initial payments in the sum of $2,570 which were carried on petitioner's books as of December 31, 1934, as "deferred income" were income to petitioner in the year 1934.

■ The second issue concerns the deductibility of the sum of $4,000 paid by petitioner in a compromise settlement of litigation. Petitioner contends that the amount paid is deductible as an ordinary and necessary expense of conducting its business. Respondent asserts that it was made in defense of petitioner's title to property and should be treated as an addition to the cost basis of the property. Petitioner had bought part of the assets of a bankrupt corporation and the trustee in bankruptcy brought suit against petitioner to invalidate this transfer. Despite a judgment in petitioner's favor by the U. S. District Court, which was affirmed by the Circuit Court of Appeals, the trustee renewed his attack on what he claimed to be a fraudulent transfer. To protect its credit, it is said, petitioner compromised the suit. But it was also to protect the assets which it had acquired, for its credit could not have been affected save through the questionableness of its title to the assets. Such an expense, as we have recently decided in *Morgan Jones Estate*, 43 B. T. A. 691, is a capital expense and its deduction from income must, therefore, be disallowed.

■ The third issue is whether or not petitioner is entitled to a bad debt deduction in the sum of $3,901.52. Petitioner claims the deduction on the ground that the Red Cross Pharmacy account was uncollectible and was charged off on petitioner's books during the taxable year. Respondent urges that a deduction for a bad debt is not allowable, since the account was not ascertained to be worthless in the taxable year.

Section 23 (k) of the Revenue Act of 1934 provides that deductible bad debts are "debts ascertained to be worthless and charged off within the taxable year." Here, the account was charged off in the taxable year. In order to obtain the deduction, however, petitioner must show that the debt was reasonably ascertained to be worthless during the taxable year. *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566. Petitioner has not sustained the burden of proof on this point. While petitioner may have had reasons sufficient to it for not pressing legal action on the account, this fact does not demonstrate worthlessness and there can be little doubt that the account had considerable value. The evidence does not show that the debtor was insolvent or that the account could not have been collected if adequately pressed. We find no error in respondent's denial of the deduction in the taxable year.

■ The final question before us is whether or not that portion allocable to 1934 of the refund made in 1939 by the Florida Power & Light Co. to petitioner by court order sustaining the city of Miami's lower rate was income to petitioner in the year 1934. Petitioner had in 1934 claimed and been allowed as a deduction the full amount paid by it to the Light Co. It now claims that its gross income for

that year should be increased by the amount of the refund allocable to that year, in correction of what now appears to have been an excessive deduction. Anything unusual in the taxpayer's request to have its taxes increased for the taxable year 1934 is explained, obviously, by a desire not to have the entire sum refunded in 1939 treated as gross income received in that year. Petitioner relies on *Elsie S. Eckstein*, 41 B. T. A. 746, 751.

Strictly taken, our decision in that case is not authority, for the issue there was conceded by the taxpayer; but our reasoning does support the theory now relied on by petitioner. There the taxpayer had accrued and deducted certain state property taxes in 1932, but actually paid a lesser amount in 1934. Her contention was that the difference should be adjusted as of the earlier year and not treated as income in 1934. We pointed out that, where the earlier years were not open to adjustment by reason of the statute of limitations, so much of the refund as represented the excess over the accrued and deducted tax was "to be treated as taxable income in the year in which the refund is made." The taxpayer, now taking a different tack, also assigned as error the disallowance in 1934 of the excess of taxes accrued and deducted in that year over the amount actually paid in 1935 and 1936. In other words, the taxpayer objected to the correction made by the Commissioner, where correction was possible under the statute of limitations. The taxpayer on brief conceded the correctness of the Commissioner's action in this regard, but raised the question apparently to show inconsistency in the Commissioner's method. Our opinion set forth the complete answer to this, for had the result of the taxpayer's successful negotiations with the state tax authorities for a reduction of her taxes transpired before the Federal statute of limitations had run, the Commissioner would have completely adjusted the 1932 taxes, as he had already done in part in 1934 on the basis of the facts then known to him. But her concealment of these facts allowed the statute to run, and the Commissioner had no recourse but to treat the refund as income in the year it was received. We said in that opinion that "we have consistently held that where in a given year a taxpayer takes a deduction which, prior to the final determination of his income tax liability for such year, is ascertained to be excessive, only the correct amount will be allowed in the final determination of his income tax liability."

We are of the opinion that the rule thus stated in *Eckstein's* case is that which the Board has consistently applied, with the exception of a few distinguishable cases and *obiter dicta*. While that case and most of the cases thereafter discussed involve refunds of taxes previously deducted, the equitable principle which lies at the root of the rule is equally applicable to the facts of the instant proceeding. We might

have laid it down as a basic principle in the beginning that, when the taxpayer on the accrual basis has accrued a valid tax, he shall be entitled to the deduction in that year and any refund shall be treated as income in the year of receipt. That is the respondent's contention here. He points out that the rates charged petitioner by the power company were an absolute obligation of petitioner when laid, and that petitioner was not even itself contesting their validity. The conditions for accruing the obligation, it is said, were present, *Helvering* v. *Russian Finance & Construction Corporation*, 77 Fed. (2d) 324; and the mere contingency of the obligation's later modification by a decision favorable to the city in its pending suit against the company should not postpone until that year final determination, by relation back to prior years, of the amount of deductions to be allowed in those years, *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417. Each annual accounting period should constitute a closed transaction and refunds, or repayment of prior losses, *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359; which are made in later years should lie where they fall.

Much might be said for such a doctrine, but it is too late to advance it now. We have too long followed a different principle. As early as *Inland Products Co.*, 10 B. T. A. 235 (1928) ; affd., 31 Fed. (2d) 867; the taxpayer raised the plea that a tax paid under mistake of law, having been paid voluntarily, was not recoverable in an action at law, and, therefore, was deductible in full in the earlier year, although refunded in a later year. We held otherwise, saying that, the money having been refunded prior to a final determination of tax liability for the earlier year, it should not be allowed as a deduction in that year, and sustained the deficiency (arising from the excess deduction) for the year of payment. A little later in the same year we took the same view in *Philip C. Brown*, 10 B. T. A. 1122, and there held that a state inheritance tax paid by the taxpayer in 1922, which was later held unconstitutional and refunded before the proceeding for that year was brought before the Board, could not be deducted in the year when payment was made. In 1929, in *Lehigh Valley Coal Sales Co.*, 15 B. T. A. 1401, we reached the same conclusion on similar facts against the Commissioner's contention that the unconstitutional tax was income in the year of refund. We pointed out that "amended returns or additional assessments were available to correct the error" of the prior year. Likewise, in *Mary W. Leach*, 16 B. T. A. 781; affd., 50 Fed. (2d) 371, we held that a deduction of estate tax in 1922 which was later refunded in part should be adjusted as to the excess in 1922, the taxpayer being on the cash basis.

It will be observed that all of these cases support petitioner's contention here, since in all we required readjustment of a later refunded deduction in the year in which it was taken. It should be noted that

in none of them did the statute of limitations bar such a recomputation of the tax after the transaction was closed.

The validity of the rule laid down in these cases has been recognized either inferentially or explicitly in many of our more recent opinions, the majority of them involving deductions of taxes paid under unconstitutional statutes. Thus, in *Charles F. Fawsett*, 30 B. T. A. 908, we distinguished that case from the cases of *Philip C. Brown, supra*, and *Inland Products Co., supra*, because in those cases "the amounts illegally exacted were refunded to the taxpayers, and it was held that, having been made whole, they were not in a position to claim deductions," whereas in *Fawsett's* case "the same statute which imposed the levy prevents a recovery by reason of the limitation period it prescribes." In *Dixie Margarine Co.*, 38 B. T. A. 471, reversed on another point, 115 Fed. (2d) 445, we said: "In *E. L. Bruce Co.*, 19 B. T. A. 777, and *Charles F. Fawsett*, 30 B. T. A. 908, we held that amounts paid as taxes under unconstitutional and void state statutes, *where such amounts have not been later refunded and refunds were barred by limitations or otherwise*, were allowable deductions * * *." (Emphasis ours.) We also said: "Such amounts have been held *not* to constitute allowable deductions from gross income for the year in which paid *only* in those cases where refund was received prior to the final determination of the tax liability for the year in which the refund payment was made," and cited as authority *Inland Products Co., supra*, and *Mary W. Leach, supra*. In *Estate of David Davies*, 42 B. T. A. 965, we said: "We have held that where taxes imposed by a statute later declared unconstitutional are paid by a taxpayer * * * *and such taxes have not been refunded prior to a final determination of the tax liability for the year in which such payments were made*, then * * * the taxpayer is entitled to a deduction * * * in the year of payment * * *." (Emphasis ours.) See also *Suffolk Co., Ltd.*, 42 B. T. A. 994, 995.

In *Eckert Packing Co.*, 42 B. T. A. 1000, we held that "A taxpayer is not entitled to deduct the amount of tax paid in a given year if, prior to the final determination of his tax liability for such year, the amount paid is refunded or recovered" and cited, *inter alia*, the cases of *Leach v. Commissioner, supra; Inland Products Co. v. Commissioner, supra; Philip C. Brown, supra;* and *Lehigh Valley Co., supra*. In that opinion we quote with approval the rule laid down in *Elsie S. Eckstein, supra*, which we have already set out, and also quoted with approval from an opinion of the Court of Claims in *Bohemian Breweries, Inc. v. United States*, 27 Fed. Supp. 588, as follows:

* * * So long as a case involving the audit and determination of the correct tax liability of a taxpayer is open and under consideration by the Commissioner of Internal Revenue, it is his duty correctly to determine the income

of the taxpayer and deductions to which the taxpayer is entitled. *Lewis* v. *Reynolds*, 284 U. S. 281; *Illinois Terminal Co.* v. *United States*, 73 C. Cls. 263, 53 F. (2d) 904. * * * This conclusion that plaintiff cannot recover because of the exclusion of these deductions is not inconsistent with the rule that an amount deducted and allowed from income in a certain year must be included in income when collected or recovered in a subsequent year when the correction of the return and the tax liability in a prior year is barred by the statute of limitations. * * * Wherever it is possible to do so, the taxing statutes require that the items of income subject to tax and the deductions to which the taxpayer is legally entitled *for the years under consideration* be correctly and legally determined by the Commissioner in his final decision, notwithstanding such decision may be made several years after the returns for the particular years involved were filed. *Lewis* v. *Reynolds, supra.* * * * [Italics supplied.]

Four cases which are apparently contrary to the established rule are, in reality, distinguishable on their facts. In *Houbigant, Inc.*, 31 B. T. A. 954; affd., 80 Fed. (2d) 1012, there was a refund of custom duties which we treated as income in the year of receipt, but we pointed out in our opinion that the statute of limitations had run for the years in which the duties were paid, and, therefore, any readjustment of the deductions in those years would have been impossible. In *Victoria Paper Mills Co.*, 32 B. T. A. 666; affd., 83 Fed. (2d) 1022, we held that court judgments (which were entered in 1931 and assigned to a bank and credited to a taxpayer) of refunds of city property taxes paid in 1922 to 1930, inclusive, should be treated as income in 1931. Although the matter was not referred to in the opinion, it was evident that the statute of limitations barred adjustment in most of the years of payment. In *M & N Cigar Manufacturers, Inc.*, 42 B. T. A. 1091, the facts showed that the refund in question was made pursuant to a compromise settlement and was in a lump sum considerably less than the amount of taxes paid, and could not be allocated to the various years involved. In *Estate of William H. Block*, 39 B. T. A. 338, we specifically pointed out that it was too late to make any adjustment by reducing the deductions for the prior years. That being true, the result reached in that case was inevitable and refunds were taxable to the taxpayer in the year received by him.

We think it is clear that, despite some apparent departures from it, the rule to be drawn from our decisions is that all refunds of paid taxes are to be adjusted to the years in which the taxes were paid and deductions claimed, as the best method to reflect income; the only proper departure from the rule of adjustment of the refund in the years of payment is where the statute of limitations or some other consideration has made it impossible. In such cases it is obviously inequitable to allow the taxpayer the unjust enrichment which would result and the refund must then be treated as income in the year of receipt. See *Block's Estate, supra.*

We are of the opinion that the rates exacted by the public utility company here were provisionally valid obligations, just as they would have been if enforced under a statute properly enacted but later held unconstitutional, and as such they justified the deduction of the amounts accrued and paid under them in the prior years. To the extent that these deductions may be adjusted in the light of our present knowledge of the invalidity of the rates and the consequent refund, this should be done; but where the statute of limitations sets up a bar to such correction, the refund for those years must be treated as income when received.

A concluding word will dispose of *Commissioner* v. *Central United National Bank*, 99 Fed. (2d) 568, affirming 33 B. T. A. 588, which we erroneously thought in *M&N Cigar Manufacturers, Inc., supra,* to support the view that any refund of an amount previously paid and claimed as a deduction constitutes income in the year of the refund regardless of whether the statute of limitations may bar readjustment of the tax for the year in which the deduction has been claimed. Examination of the peculiar facts of that case will show that it stands for no such doctrine. There a taxpayer enjoined the collection of personal property taxes by a county treasurer and decision on its case was deferred until decision of a parallel case. That decision proved favorable to the taxpayer, but appeal was taken by the county tax authority. Before that case was finally decided, however, the taxpayer in the principal case reached a compromise with the county treasurer which was made the basis of the court's decree in another suit by the same taxpayer and of the same nature, under which the taxpayer in 1932 paid for taxes for the years 1928, 1929, and 1930 amounts considerably less than those originally claimed by the county and taken as deductions from Federal income in the taxpayer's return to the Commissioner. The Circuit Court reversed the District Court in the parallel case, and thereupon the principal taxpayer reported as income in 1932 the amount it had saved by the compromise, or put otherwise, the difference between the deductions allowed it in prior years and the sum actually paid in 1932. The Commissioner contended, however, that its income for 1929 and 1930 should be adjusted. We overruled him and the Circuit Court affirmed.

The rationale of the Circuit Court's opinion is that the deductions for prior years were closed because "all the events which rendered respondent [taxpayer] liable for the full amount of the taxes claimed had occurred", citing *United States* v. *Anderson*, 269 U. S. 422. The court points out that the taxes were valid obligations and distinguishes the decisions of three other circuits on the ground that in those cases the tax was erroneously assessed and the deduction could not therefore be legally taken. *Inland Products* v. *Blair*, 31 Fed. (2d) 867; *Leach* v. *Commissioner*, 50 Fed. (2d) 371; *Bergan* v. *Commissioner*,

80 Fed. (2d) 89. This is a valid distinction, with the qualification we have already pointed out that even an unconstitutional statute has a provisional validity for tax purposes until otherwise construed by the Supreme Court, but it certainly does not justify the generalization sometimes drawn from these invalid tax cases that the refund of every valid tax will constitute income in the year of the refund; and it may be doubted whether the court so meant it. It should be noted that the taxpayer had effected a compromise with the local tax officers while litigation was still pending in 1932. In other words, he drove a bargain while the judicial outcome was still in doubt and by this agreement made a saving. The fundamental premise of the bargain was that the validity of the tax was doubtful. In this light the compromise can be regarded only in the light of a new transaction taking place in 1932, which, instead of bearing a definite relation to the validity of the tax and its refund in case of invalidity, put those questions out of consideration altogether. There was no reason for relation back to the original deduction here and the court properly disregarded it. In the circumstances the Circuit Court treated the new transaction, divorced as it was from the original deduction or later possible refunds, as single in itself, and, since it resulted in a gain to the taxpayer in the year in which it was effected, taxed the gain when made.

Obviously, then, *Commissioner* v. *Central United National Bank, supra,* is not in conflict with the view which we take of the instant case; and the course of our decisions is clear.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

––––––––––

SMITH, dissenting: Section 41 of the Revenue Act of 1934 provides:

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *

The petitioner kept its books of account upon the accrual basis and made its income tax returns in accordance therewith. In connection with such method of reporting, the United States Supreme Court, in *United States* v. *Anderson,* 269 U. S. 422, said that the accrual system was incorporated into the law:

* * * to enable taxpayers to keep their books and make their returns according to scientific accounting principles, by charging against income earned during the taxable period, the expenses incurred in and *properly attributable to* the process of earning income during that period; * * * [Italics supplied.]

It seems to me that, if the accrual method of accounting employed by the taxpayer for 1934 is given effect, the solution of the problem involved in this proceeding is very simple. The first three issues should be decided in favor of the petitioner and the last one against it. The only possible question relates to the second issue, viz., whether the $4,000 paid in 1934 in settlement of litigation is a capital expenditure or a deductible expense.

With respect to the first question, the majority opinion holds that moneys deposited by advertisers under advertising contracts are taxable income of the year in which the deposit is made. Petitioner takes such deposits into income as the contracts are performed. I think this method of reporting is proper under the accrual system.

The second question is whether the petitioner is entitled to deduct from gross income the $4,000 which it paid in settlement of litigation. The total amount paid, including expenses, was $5,686.13. The respondent allowed the deduction of $1,686.13, but disallowed the balance. I think that the respondent erred in such disallowance.

In my opinion it is unreasonable to consider that the $4,000 was a capital expenditure. The amount was paid for the purpose of freeing the petitioner from the harassment of a suit. In substantially a similar case, *International Shoe Co.*, 38 B. T. A. 81, 95, the Board held that an expenditure of the taxpayer in 1932 of $150,500 to settle embarrassing litigation was a deductible expense. That litigation did not involve title to property. Neither, I think, did this. In my opinion the deduction was proper.

The third question is whether petitioner is entitled to deduct from gross income a debt ascertained to be worthless and charged off during 1934. I think there is no question but that it was ascertained to be worthless in that year and there is no question as to the charge-off. When there was a collection of a portion of the debt in 1935 that amount constituted taxable income of that year.

The fourth question is whether the petitioner's deduction for an electric light bill for 1934 should be adjusted by reason of a refund received in 1939. In my opinion there can be no question but that the amount charged for 1934 was an accruable item of that year. The refund received in 1939 accrued in 1939 and constituted income of that year. Under the rule of the Supreme Court in *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, each tax year stands by itself. The tax liability for 1934 was not affected by what happened in 1939.

---

VAN FOSSAN, dissenting: I am unable to agree with the holding of the majority on the fourth stated issue.

On the question raised by the fourth issue, I recognize that there has not been entire consistency in the opinions of the Board. I be-

lieve, however, that correct principles were announced in *Estate of William H. Block*, 39 B. T. A. 338; affd., 111 Fed. (2d) 60, where we said:

Income tax liability must be determined for annual periods on the basis of facts as they existed in each period. When recovery or some other event which is inconsistent with what has been done in the past occurs, adjustment must be made in reporting income for the year in which the change occurs. No other system would be practical in view of the statute of limitations, the obvious administrative difficulties involved, and the lack of finality in income tax liability which would result. * * *

The majority opinion attempts to distinguish the *Block* case and the decision in *Commissioner* v. *Central United National Bank*, 99 Fed. (2d) 568, affirming 33 B. T. A. 588, but I believe the attempt futile. If correct principles were applied we would deny the request that an allocated portion of the refund be included in petitioner's gross income for the taxable year. The entire refund should be included in income in 1939, when it was actually received. The fortuitous circumstance that the year 1934 is still open should not be held to be a controlling fact. A pertinent inquiry would be—assuming that the years subsequent to 1934 are closed, the present record being silent on the point— Is the balance of the refund free of tax, or shall we construct and apply a different rule?

STERNHAGEN and ARNOLD agree with this dissent.

---

MURDOCK, dissenting: The petitioner accrued and paid in 1934 the full charge for electric current. It never contested the amount and had no way of knowing in 1934 that any of the amount paid would ever be refunded. The accrual, the deduction claimed, and the allowance thereof for 1934 were all in accordance with proper accounting principles and with the statute. The matter ought to end there. The issue of whether the taxpayer should be required, at its own instance, to pay more tax than the Commissioner seeks to collect, is a false issue and whatever is said in deciding it must necessarily be *obiter*. The real question which the petitioner wants us to decide is that the refund was not income when it was received in 1939. But that question can not be decided here.

Furthermore, much that is said on this subject in the majority opinion is wrong. I dissent from the opinion that deductions and income should be permitted to depend upon the wholly unrelated circumstance that the statute of limitations has or has not run.[1] The

---

[1] The refund involved other years besides 1934 and, under this decision, parts may be income, parts may not, depending upon whether or not those years were closed when 1939 is being closed and, perhaps, upon how the item was adjusted for those years.

correct rule, that income tax liability must be determined for annual periods upon the basis of facts as they existed in each such period, is not only inconsistent with the rule favored by the majority, but it has been approved by the highest court and followed many times by the courts and the Board. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359; *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417; *Central United National Bank*, 33 B. T. A. 588; affd., 99 Fed. (2d) 568; *Estate of William H. Block*, 39 B. T. A. 338; affd., 111 Fed. (2d) 60; *Dougherty's Sons, Inc.* v. *Commissioner*, 121 Fed. (2d) 700, reversing 42 B. T. A. 892 (a case in which the Board thought the rule required the opposite result). Thus, it is vacuous for the prevailing opinion to say, "Much might be said for such a doctrine, but it is too late to advance it now." The advance took place some time ago and much has been said for the doctrine already. See, for example, *Estate of William H. Block*, *supra*.

The majority recognizes that the statement of any rule in *Elsie S. Eckstein*, 41 B. T. A. 746, was pure *dicta*, because the issue had been conceded. But it is wrong to say that the statute of limitations rule has been "consistently applied, with the exception of a few distinguishable cases and *obiter dicta*." The Board has not been consistent. Moreover, some of the cases in which the statute of limitations has been mentioned did not depend upon that factor, mentioned it merely in passing, and would have been decided the same way regardless of whether or not the statute had run. See, for example, *Estate of William H. Block*, *supra; Elsie S. Eckstein*, *supra; Houbigant, Inc.*, 31 B. T. A. 954, and many of the cases involving taxes later declared unconstitutional. Those cases are reconcilable with the strict annual period rule. So is *Inland Products Co.*, 10 B. T. A. 235; affd., 31 Fed. (2d) 867. *Lehigh Valley Coal Sales Co.*, 15 B. T. A. 1401, involved invested capital and is therefore not in point. However, I would not hope to reconcile all of the cases with my view, but, on the other hand, the prevailing opinion fails to distinguish satisfactorily *Victoria Paper Mills Co.*, 32 B. T. A. 666; affd., 83 Fed. (2d) 1022; *M & N Cigar Manufacturers, Inc.*, 42 B. T. A. 1091; *Estate of William H. Block*, *supra; Central United National Bank*, *supra; Dougherty's Sons, Inc.* v. *Commissioner*, *supra; Burnet* v. *Sanford & Brooks Co.*, *supra;* and a number of other cases cited in the *Houbigant* and *Block* cases. I prefer to adhere to the more practical rule approved and followed in those cases, when the question is next properly raised.

STERNHAGEN, BLACK, and ARNOLD agree with this dissent.