SCHWABACHER HARDWARE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102339. Promulgated November 13, 1941.

*Charles Horowitz, Esq.*, for the petitioner.
*B. H. Neblett, Esq.*, for the respondent.

701

OPINION.

HILL: At the hearing counsel for petitioner objected to the stipulated facts regarding the receipt of funds by petitioner from the surety in 1940 on the ground of materiality. We hereby overrule the objection. The materiality of these facts will be apparent from our discussion of the second issue.

The first question presented is whether or not petitioner is entitled to a credit under section 26 (c) (1) of the Revenue Act of 1936.[1] Petitioner contends that it was restricted in the payment of dividends in the taxable year by a written contract executed by petitioner prior to May 1, 1936. Respondent argues that the credit must be denied on the ground that the contract which restricted payment of dividends by petitioner was not a written contract executed by petitioner.

The contract upon which petitioner relies in its claim for the credit is contained in a letter written by the bank to petitioner in which the bank, through its manager, announced that it was placing an open line of credit at petitioner's disposal and consented to an immediate payment of a $40,000 dividend, "with the understanding that no further dividends will be declared until the condition of the business amply warrants it * * *." This was the only writing involved in the contract. No one signed the contract on behalf of petitioner. In our opinion this was not a written contract executed by petitioner. In *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46, 49, the Supreme Court stated:

The natural impression conveyed by the words "written contract executed by the corporation" is that an explicit understanding has been reached, reduced to writing, signed and delivered.

We consider that "executed", as used in the language just quoted, means signed by or for the taxpayer.

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

* * * * * *

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

A taxpayer claiming a credit under section 26 (c) (1) of the Revenue Act of 1936 must show strict compliance with the terms of the statute. *Union Telephone Co.*, 44 B. T. A. 607. In the *Union Telephone* case we held that a contract was not executed by the taxpayer within the meaning of section 26 (c) (1) where the taxpayer's parent corporation executed the contract for which the credit was claimed, even though it was shown that it was customary for the parent corporation to enter into contracts for its subsidiaries, which acquiesced in such action of the parent. In *Boeckeler Lumber Co.*, 43 B. T. A. 804, we held that a contract entered into by the predecessor of the taxpayer, which had orally assumed the predecessor's liability under the contract, was not a contract executed by the taxpayer. In that case we stated:

> The evidence indicates that petitioner did assume its predecessor's liabilities under that contract. But it did not do this by similar contract to which it affixed its corporate signature.

In *Kolor-Thru Corporation*, 44 B. T. A. 1303, we held that a contract which was executed by promoters of the taxpayers prior to its incorporation and was ratified or adopted by actions of the taxpayer was not a contract executed by the taxpayer within the meaning of section 26 (c) (1).

Upon authority of the *Union Telephone Co.*, *Boeckeler Lumber Co.*, and *Kolor-Thru Corporation* cases, we hold that petitioner is not entitled to a credit under section 26 (c) (1) of the Revenue Act of 1936.

The second issue is whether or not petitioner is entitled to a deduction for amounts embezzled from it during the taxable year for which petitioner received reimbursement from a surety in 1940. Petitioner contends that the amounts embezzled in the taxable year are deductible, since the surety did not reimburse petitioner for its losses until after that year. Respondent contends that deductions for losses by embezzlement in the taxable year should be reduced to the extent that such losses were compensated for by insurance, notwithstanding that such compensation occurred in a taxable year subsequent to that of the embezzlement.

Petitioner relies upon the case of *Cahn* v. *Commissioner*, 92 Fed. (2d) 674, in which the Circuit Court of Appeals for the Ninth Circuit held that a loss for jewelry stolen in the taxable year was deductible in toto in the taxable year, even though a claim against an insurance company for reimbursement of the loss was compromised, and the amount agreed upon paid, in the following year. That case was apparently presented and decided on the narrow question of whether the claim against the insurance company for loss by theft was accruable in the taxable year in which the loss occurred.

The court held, on the facts there, that the claim was not so accruable and that hence the loss was not "compensated for by insurance or otherwise" in the taxable year. That question is not involved in the consideration of our decision here.

In the instant case we hold for respondent upon the principle that deductions of a taxable year before us may be adjusted to reflect a later refund or reimbursement, even though such refund or reimbursement may occur after the taxable year involved. *E. B. Elliott Co.*, 45 B. T. A. 82, and cases therein cited.

Respondent denied deductions for the amounts embezzled during the period from May 1 to December 31, 1937, on the ground that full recovery for those losses was had by petitioner from the surety in 1940. As to the amounts embezzled in the period January 1 through April 30, 1937, respondent determined that the sum of $103.71 of the $1,000 surety bond related to such losses and limited the deduction for such losses to the sum of $1,965.03. The sum of $103.71 was arrived at by determining the relation which the sum of $2,068.74, the amount embezzled from January 1 through April 30, 1937, bears to $19,947.86, the total amount embezzled prior to January 1, 1937, and through April 30, 1937, and multiplying that result by $1,000. This is the proper method of determining the proportion of the $1,000 reimbursement which relates to the embezzlements from January 1 through April 30, 1937. Petitioner has conceded that the additional deduction of $1,068.74 which respondent allowed in his notice of deficiency should be eliminated and that amount restored to gross income. On the authority of *E. B. Elliott Co.*, *supra*, we hold that these adjustments should be made. Although the amounts received by petitioner from the surety in 1940 were in the form of a "loan", the amounts received were repayable only out of the proceeds of a suit directed against the Union Pacific Railroad Co. There was no requirement that petitioner repay the amounts received other than from such proceeds. Accordingly, the amounts received from the surety must be deemed to be true reimbursement for the losses.

Since we have sustained respondent on both issues, we hold, in accordance with the stipulation of the parties, that there is a deficiency in petitioner's income tax of $14,848.75.

*Decision will be entered under Rule 50.*