*879 OPINION.
Opper :
The present controversy arises as the ultimate result of a sale by petitioner on the installment basis. Upon default of the purchaser in 1932 the securities sold were reacquired, subject, however, to certain liens and charges incurred by the vendee and by the corporation which he controlled by holding the securities. At the same time agreements between petitioner and the several lienors modified their respective interests. Although containing more complications than need be detailed, the essence of these contracts was to apportion the earnings of the securities in accordance with the respective interests of the parties; and to arrange for future payments to the creditors to provide eventually for the discharge of their advances.
In addition to the stock of Detroit Reduction Co. which was the subject matter of the sale on the installment basis, petitioner had sold to the same vendee stock of American Reduction Co. which, however, was not an installment sale. But this stock was reacquired at the same time, liens and charges existed against it in favor of the same creditors, and the same agreements between the latter and *880 petitioner referred to both. In determining petitioner’s income for that year, including its gain from the retransfer of all the property, respondent permitted it to deduct the total of the adjusted claims as “damage and use.”
In 1936, the year before us, petitioner made a final settlement with the lienors under which, by a cash payment of very much less than their adjusted total, all claims against both blocks of stock were withdrawn. The deficiency arises from respondent’s assertion that petitioner is chargeable with income in the year of settlement to the extent of the difference between the amount actually paid to remove the liens and the deduction allowed in the prior year. This deduction had resulted from a purported application of respondent’s regulation relating to installment sales of personalty which at the time provided as follows:
* * * * * * *
If for any reason the purchaser defaults in any of his payments, and the vendor returning income on the installment basis repossesses the property, the entire amount received in installment payments and retained by the vendor, less the sum of the profits previously returned as income and an amount representing proper allowance for damage and use, if any, will be income of the vendor for the year in which the property is repossessed, and the property repossessed must be carried on the boots of the vendor at its original cost, less proper allowance for damage and use, if any.
****$$&
[Regulations 77, art. 351.]
If this regulation comprehended a case like this where there had been a casual sale, and the “damage and use” took the form of liens rather than physical deterioration, still we think the action of respondent’s agent in dealing with petitioner’s 1932 income was so erroneous an interpretation of the regulation as not to be supportable on any ground.
The regulation treats the damage and use allowance not as a general deduction from gross income, but specifically and narrowly as an offset against the income resulting from the retransfer of the subject of an installment sale. Presumably the theory is that a vendor resuming ownership is as well off as he was before the sale and in addition has been enriched by the vendee’s purchase money, which constitutes taxable income;[1] except that the vendor is to be accorded a set-off for damage and use to the extent that the property has been diminished in value by the use to which the vendee may have put it meanwhile. The justification for the allowance of damage *881 and. use must be that since, under the regulation, the taxpayer’s income from reacquisition is computed on the cash he lias receded and without regard to the market value of the transferred property, the gain is illusory unless it is diminished by the counteracting damage caused by the vendee’s use. But no recognition is given to a possibly minus result of that operation, and authorization to apply a net loss on reacquisition as a general deduction from gross income is lacking.
Here the regulation could properly be employed only in computing gain on the transfer of the Detroit stock since only that had been sold on the installment basis; and no more than a minor portion of petitioner’s 1932 income was profit on its reacquisition which was subject to tax under the regulation. It follows that the permissible allowance for damage and use under the regulatory scheme was limited by this related item of income. No greater allowance could have been made, since no greater income appeared against which the allowance could act as an offset. If this had been the extent of respondent’s treatment, the tax benefit to petitioner in 1932 from the damage and use allowance would have been no more than the part of the income which it canceled. And when, in 1936, almost twice this amount was paid out in removal of the liens, it is evident that the net result would have left the petitioner with no tax advantage from the two transactions. Hence, the necessity of treating the 1936 transaction as giving rise to taxable income[2] would not have existed. Central Loan & Investment Co., 39 B. T. A. 981. See National Bank of Commerce of Seattle, 40 B. T. A. 72; affd. (C. C. A., 9th Cir.), 115 Fed. (2d) 875.
It is evident that the deduction permitted in 1932 was due in large part to inclusion in the computation of a much greater gain on the receipt of the American stock. But for this there was no warrant, since those securities were not the subject of an installment sale and altogether different principles for computing gain and allowing for loss of value were applicable.[3] The two transactions were not susceptible of joint treatment and respondent’s action can acquire no authority from association of the two.
It follows that any addition made to petitioner’s tax liability for the year in dispute would have as its only justification an error in *882 respondent’s calculation, of the proper tax for an earlier year. This Board is committed to the position that the principle requiring adjustment in a later year on account of subsequent developments which result in an unwarranted tax benefit, does not apply under these circumstances. American Light & Traction Co., 42 B. T. A. 1121. Respondent’s determination must accordingly be disapproved.
Reviewed by the Board.

Decision will he entered wider Rule 50.

 “ * * * And when property is sold to be paid for in installments, and only part oí what is paid is returned as gain, but the property is gotten back without any refund, so that all that was received turns out to be gain, the addition is made to income in the year the additional gain appears to be such.” [Sneed v. Commissioner (C. C. A., 5th Cir.), 119 Fed. (2d) 767, affirming 40 B. T. A. 1136.]

 Estate of William H. Block, 39 B. T. A. 338; affd. (C. C. A., 7th Cir.), 111 Fed. (2d) 60; certiorari denied, 311 U. S. 658; Commissioner v. Liberty Bank & Trust Co. (C. C. A., 6th Cir.), 59 Fed. (2d) 320; Beacon Auto Stores, Inc., 42 B. T. A. 703; Helvering v. Jane Holding Corporation (C. C. A., 8th Cir.), 109 Fed. (2d) 933; certiorari denied, 310 U. S. 653; Houbigant, Inc., 31 B. T. A. 954; affd. (C. C. A., 2d Cir.), 80 Fed. (2d) 1012; certiorari denied, 298 U. S. 669; Jamaica Water Supply Co., 42 B. T. A. 359; Hartford Hat & Cap Co., 7 B. T. A. 714; South Dakota Concrete Products Co., 26 B. T. A. 1429. See E. B. Elliott Co., 45 B. T. A. 82.

 Regulations 77, art. 354; G. C. M. 1387, C. B. VI-1, p. 48; G. C. M. 952, C. B. VI-1, p. 191.,