Etta H. Harvey v. Commissioner.
Harvey v. Commissioner
Docket No. 47814.
United States Tax Court
T.C. Memo 1954-113; 1954 Tax Ct. Memo LEXIS 133; 13 T.C.M. (CCH) 716; T.C.M. (RIA) 54219; July 30, 1954, Filed *133 Herald A. O'Neill, Esq., 304 Spring Street, Seattle, Wash., and John F. Dore, Esq., for the petitioner. John H. Welch, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income taxes and penalties as follows: Failure to File,
and Under-
estimate of,
Delinquency
Estimated
Year
Income Tax
Fraud Penalty
Penalty
Tax; Penalty
1947
$ 331.54
$ 165.77
$82.89
$ 53.04
1948
32,904.30
16,452.15
5,272.37
1949
126.00
1950
463.00
1951
500.00
Petitioner claims an overpayment for 1951. Respondent has conceded one issue. Other adjustments have been settled by stipulation. The remaining questions, as stated by respondent, are: 1. Is respondent's net worth and expenditures method of computing petitioner's taxable net income proper for the years 1947 and 1948? 2. Did petitioner omit from gross income an amount properly includible therein in excess of 25 per cent of the amount stated in her 1948 income tax return, within the meaning of section 275(c) of the Internal Revenue Code? 3. Is some part of *134 the deficiency in income tax for either of the years 1947 or 1948 due to fraud with intent to evade tax? 4. Is petitioner's failure to file an income tax return for the taxable year 1947 due to wilful neglect? 5. Are the renovation costs of the Fleming Apartments properly added to the building as a part of its cost for the purpose of computing allowable depreciation? 6. Is the recovery of a judgment by petitioner in 1949 from her accountant additional income for that year? Findings of Fact Some of the facts have been stipulated and are hereby found. Petitioner is an individual residing at 2321 4th Avenue, Seattle, Washington. She filed timely individual income tax returns with the collector for the district of Washington for the taxable years 1948, 1949, 1950 and 1951. Petitioner filed no income tax return for the taxable year 1947. During the month of September 1948, petitioner acquired a tenanted and occupied apartment building, including fixtures, for the sum of $112,351.20. Petitioner expended $1,200 in attorney fees in the acquisition of this building. The property was paid for by petitioner as follows: (a) $5,500 in cash was paid on August 31, 1948 to Vincent *135 D. Miller, Inc., agent for the owner of the Fleming Apartments. (b) On or about September 13, 1948, petitioner delivered the sum of $47,000 to Will G. Beardslee, her attorney in Seattle, Washington for disbursement as follows: Cash received, September 13, 1948
$47,000.00
Original deposit on sale price, September 13, 1948
$40,000.00
Proration of interest, rents, taxes, etc., Sept. 17, 1948
1,851.20
Three mortgage payments
1,894.45
Deposit in the National Bank of Commerce
1,000.00
Attorney's fee and inspection charges
1,200.00
45,945.65
Balance
$ 1,054.35
February mortgage payment
500.00
$ 554.35
* App. fee Woods v. Harvey
$5.50
* App. fee Hollenbeck v. Harvey
5.50
* App. fee Soden v. Harvey
5.50
Balance
* $37.85
(c) The balance of the purchase price of $112,351.20 was accounted for by the assumption of a mortgage outstanding against the property. The cost of the property, as adjusted for the attorney's fee, is allocable and depreciation may be computed thereon as follows: Depre-
Allocation
ciation
Land
$22,711.20
Building
85,163.00
30 years
Furniture and fixtures
5,677.00
5 years
*136 Within 6 months after acquiring the Fleming Apartments, petitioner spent $13,566.26 for renovation and improvements as follows: Additions to fixtures and equipment,
1948
$ 2,386.26
Additions to fixtures and equipment,
1949
1,216.46
Plumbing repairs and replacements
1,265.30
Painting and decorating
2,111.59
Hardware
688.17
Electrical work
188.88
Floors, plastering, lumber, etc.
2,482.90
Cabinets
3,226.70
Total
$13,566.26
Respondent adjusted the depreciation claimed by petitioner for her renovation on the Fleming Apartments and recomputed her depreciation expense as follows: Depreciation
allowable
Acquired
Cost
Life
1948 - 1/4 yr.
1949
1950
1951
Sept., 1948
$11,203.47
30 yrs.
$93.36
$373.45
$373.45
$373.45
Jan., 1949
2,362.79
30 yrs.
78.76
78.76
78.76
1950
360.50
5 yrs.
36.05
72.10
Total
$13,926.76
$93.36
$452.21
$488.26
$524.31
The renovation and rehabilitation of the Fleming Apartments accomplished by the petitioner in 1948 and 1949 had an average useful life of 5 years and petitioner is entitled to depreciation thereon so computed. Petitioner was in possession *137 of $47,000 in cash on or about September 13, 1948, which was disbursed by her attorney, as set forth above. On or about August 31, 1948, she was also in possession of an additional $5,500 in cash which she disbursed as set forth above. She was also in possession of an additional $11,203.47 which she subsequently disbursed for building renovation. She had cash and securities on hand of at least $63,703.47 on or before August 31, 1948. Respondent's determination of deficiency for the taxable year 1948 is based upon an adjustment of $64,741.82, described as "other income." That adjustment includes the foregoing items of cash, the difference between the two amounts consisting of estimated living expense. No adjustment was made or claimed by respondent to petitioner's reported income from the Fleming Apartments, except a depreciation adjustment in the net amount of $86.83. Petitioner had no books of account or other records from which her taxable net income could be determined for the year 1947 or for 1948 until she acquired the Fleming Apartments in September 1948. The opening entry in her accounts corresponds to the date of acquisition of the Fleming Apartments in September 1948. *138 A purported net worth statement was prepared for petitioner as of October 3, 1947 by George V. Whittle, certified public accountant and her attorney in fact. The statement reads as follows: Checking account, Seattle First Na-
tional Bank
$ 100.00
Balance on contract for a house in
Seattle purchased and sold in 1945
for $5,500.00
2,919.87
Balance on contract for house at
Sitka
4,500.00
Dodge truck
2,728.93
8 1/3 acres at Alderwood Manor, Wash-
ington
2,500.00
Total
$12,748.80
The Internal Revenue Agent in Charge, Seattle, Washington, insisted upon a statement prior to the settlement of petitioner's income tax liability for the years 1941 to 1945, inclusive, including fraud penalties. She and Whittle discussed the problem of payment, it being apparent that the assets listed were barely sufficient to meet the obligation. Petitioner stated that she thought she could borrow money. In connection with petitioner's protest of liability for deficiencies for those years, petitioner, through Whittle, filed various documents, including a supplemental protest dated October 3, 1947. The income on which those deficiencies were assessed was not computed on the *139 net worth basis. At the end of 1948 petitioner had a net worth of at least $68,116.21 as follows: National Bank of Commerce, check-
ing account
$ 2,693.68
Deposit, Will Beardslee, attorney
2,054.35
Dodge truck
2,001.22
8 1/3 acres, Alderwood Manor
2,500.00
Fleming Apartment: Land
$22,711.20
Building
85,163.00
Furniture and fixtures
5,677.00
Improvements
11,203.47
124,754.67
$134,003.92
Less: Depreciation re-
serves: Building
$ 709.69
Improvements
93.36
Furniture and fixtures
281.00
Dodge truck
727.71
Mortgage payable
64,075.95
65,887.71
Net worth, December 31, 1948
$ 68,116.21
The proposed liability for the taxable years 1941 to 1945, inclusive, resulted in petitioner's making payment of $10,884.98 in settlement of claims for tax, penalties and interest. This was paid by petitioner through her accountant by the delivery of $13,600 in bills of large denomination to her attorney, Henry Clay Agnew, during the month following Whittle's preparation of her "net worth" statement. On or about November 5, 1947, Agnew purchased a cashier's check payable to Whittle in the amount of $13,571. Payment of $10,884.98 including interest *140 of $1,356.31 was made by Whittle to the collector of internal revenue for the district of Washington. The difference between the aforesaid liability and the amount of the check was the subject of litigation between petitioner and Whittle. Petitioner recovered a judgment on April 15, 1949, in an action brought in the Superior Court of the State of Washington in Cause No. 390880. A defendant in that action was petitioner's accountant, Whittle, to whom petitioner had paid the sum of $13,571 in 1947 in the belief that this amount was necessary to settle her tax liability. Petitioner sued for recovery of the funds in excess of the amount actually paid to settle her liability, contending that they were unlawfully and wrongfully withheld and applied, and recovered judgment in the amount of $1,936.02, it being adjudicated that Whittle was entitled to a fee of $750 in addition to a $750 accounting fee which petitioner had paid to him in 1947. Petitioner paid an attorney's fee in the amount of $484.02 out of her recovery of $1,936.02 and court costs in the amount of $17.50, leaving a net recovery to her of $1,469.50. When Revenue Agent Jack H. Dahlquist contacted petitioner in 1952 she was *141 reluctant to discuss her income tax or financial affairs and referred him to her then accountant, Hilliard. Dahlquist examined her accounts in Hilliard's office. They were opened at the date of purchase of the Fleming Apartments. Agent Dahlquist again contacted petitioner in company with Special Agent Claude J. Watson. Petitioner refused to explain to either Dahlquist or Watson where the cash came from. She insisted that the source of cash was revealed by her accounts and again referred them to Hilliard. When the agents told her that the accounts did not reveal the source she stated that she had "worked an angle," and that it was none of the examining officers' business where she got the money. Special Agent Watson was unable to discover the source of cash from his discussion with petitioner. He made further inquiry, referring to her books of account and discussing the matter with Beardslee, the attorney who assisted her when she purchased the apartments. Watson contacted O'Neill, the attorney who later had her books in his possession. Watson indicated to O'Neill by a written memorandum that the case could be closed if petitioner would reveal to the government where she obtained *142 the cash. Under date of January 14, 1946 or 1947, Agnew, petitioner's attorney at one time, is stated to have received certain United States Series E bonds from Etta Hazelwood or Etta Harvey. Petitioner did not report the receipt of any interest derived from bond redemption in 1947 or 1948. Petitioner visited her daughter in Washington, D.C. at Christmas, 1944. She traveled from Sitka, Alaska, to make this visit. The mother and daughter left Washington D.C. on or about January 20, 1945 and traveled to Seattle, Washington. Petitioner returned to Alaska in 1945 and then came back to Seattle. Petitioner had lived in Alaska since 1937. At some time while there she operated an establishment known as the Swan Lake Inn. Petitioner's net worth statement shows two income-producing items, both being balances due on contracts for the sale of real estate. She was uncertain as to the rates of interest and amounts received. The balance on the Alaska property was paid in 1948 or 1949. She reported no interest income for 1948. The balances of these contracts total $7,419.87. Petitioner did not file an income tax return for the year 1947. She had no taxable income in that year. The only income *143 received by her during that year was interest payments of not in excess of 5 per cent of the two contracts above described, one of which had an unpaid principal balance of approximately $4,500 and the other an unpaid principal balance of approximately $2,919. The total interest thereon, computed at 5 per cent amounts to $370.95. Petitioner reported gross income on her 1948 return of $5,427.49. Twenty-five per cent of this amount is $1,356.87. She did not omit from gross income an amount in excess of $1,356.87 as the result of her failure to report any interest income derived from contracts for the sale of real estate located in Sitka, Alaska and Seattle, Washington. More than 3 years have expired since the timely filing of the 1948 income tax return prior to any assessment or proceeding in court without assessment being commenced for collection of any taxes. Petitioner was not engaged in any business in 1948, nor had any source of income until on or about September 13, 1948, at which time she purchased the Fleming Apartments. The sum recovered by petitioner in 1949 as a result of her suit against her former accountants was not taxable income, but a recovery of moneys wrongfully *144 withheld from her and never deducted for income tax purposes. A Dodge truck was sold in 1949 at a loss of $319.29 and with allowable depreciation prior to the sale of $181.93. Respondent has adjusted petitioner's depreciation and loss on the sale of a Dodge truck as follows: Dodge truck, acquired in August, 1947
at a cost of
$2,728.93
(Depreciation on a five year life)
1947 Depreciation (4 months)
181.93
Balance, December 31, 1947
$2,547.00
1948 Depreciation
545.78
Balance, December 31, 1948
$2,001.22
1949 Depreciation (4 months)
181.93
Balance - adjusted cost basis - at date
of sale
$1,819.29
Sale price
1,500.00
Loss on sale
$ 319.29 This adjustment is not in dispute. Petitioner's 1949 income tax return showed a loss of $362.25 and depreciation for 1949 of $191, with a total resultant overdeduction on account of the Dodge truck in 1949 of $52.03. The net profit for 1950 was reduced on the return by the amount of a net operating loss carry-over deduction. A total amount of $238 in income tax for 1951 was paid by petitioner on February 25, 1952. Opinion The crux of the principal item of controversy, the possession by petitioner of a large *145 store of cash and bonds prior to 1947, is a matter of credibility. It reduces to a conflict between the testimony of petitioner and her witnesses, on the one hand, and that of her erstwhile accountant, a witness for respondent, on the other. Such issues are not usually as difficult as this one. Discounting petitioner's interest, and even that of her daughter, who is and has been for almost 20 years an apparently responsible employee of the Federal Government, it would be necessary, to sustain the deficiencies for 1947 and 1948, not only to conclude that both mother and daughter were guilty of deliberate and premeditated perjury, but also to assume that petitioner was earning at the rate of over $7,000 a month at a time when 3 other witnesses were positive that petitioner had no apparent source of income whatever, a fact not contradicted by the Special Agent's investigation. [1]
On the other hand, the accountant had been the unsuccessful party to a lawsuit prosecuted by petitioner. Perhaps the key to resolving the conflicting testimony *146 is the stipulation of the parties that petitioner had paid to the accountant some $13,571 in 1947 "in the belief that this amount was necessary to settle her tax liability" although the actual amount of the settlement. was only $10,884.98, including interest. It was the accountant's receipt of the larger sum and his refusal to return the difference which led to petitioner's recovery of the major portion of it in the litigation to which we have already referred. Respondent's case must stand or fall on the supported net worth statement [2] prepared by this accountant in 1947 and delivered to respondent. There is no evidence in this connection of direct statements by petitioner to respondent's agents. Only if the accountant's testimony is accurate, that petitioner knew the purpose of the net worth statement and gave him full information as to all her assets, is there any significant proof negativing petitioner's evidence as to possession of a larger amount at that time. *147 If as the record renders probable, petitioner was led to believe that the real purpose of the statement was to assure the Revenue Agents that she could make the necessary payments, it would not be unreasonable for her to disclose only sufficient property to meet the prospective outlay. As things turned out, it may be that she acted most wisely in her own interests, since we know that the accountant took all he says he thought she had although the settlement was considerably less. In itself the net worth statement is suspicious. No reason is given why the Revenue Agent should require a net worth statement for 1947 in settling tax liabilities of 1941-1945, particularly when the deficiencies themselves were not so computed. If the statement is accurate, petitioner had $12,748.80 on October 3, 1947, only $100 of which was liquid. Yet by sometime prior to November 5, 1947, in other words within about 30 days, petitioner's attorney had delivered to the accountant $13,571 in a cashier's check. If petitioner knew the purpose of this statement, which is by no means clear, and purported to give the accountant a full disclosure of all her property, which is even less certain, it still seems *148 more probable on this record that she was understating her assets at that time than that she was in receipt of gross income in the ensuing 15 months of in excess of $70,000. Our findings incorporate the conclusion that the "net worth" statement did not disclose all of petitioner's assets, and that in fact she had at that time sufficient funds to cover her disbursements in 1947 and 1948. It must follow that there was no deficiency for 1947, [3] and no delinquency penalty, no fraud for either year, that 1948 gross income was not understated by 25 per cent and that the statute of limitations has accordingly run as to 1948. *149 Our findings also dispose of the item of depreciation on the Fleming Apartments for the remaining years, which we have found as petitioner suggests to be at a composite rate of 20 per cent on a 5-year life. Some items, such as painting and plumbing repairs, cleaning, and renovation, probably had a life much shorter than 5 years, others, like the cabinets, apparently had an intermediate life of some 15 years, still others may have been permanent and entitled only to a 30-year depreciation, while some, such as furnishings and appliances, are conceded by respondent to have had an estimated life of 5 years. On the whole, a composite rate for the entire expense of reconditioning seems the most practical. As to 1949, respondent's addition to taxable income of the net amount petitioner recovered from her accountant is apparently predicated on the theory that the recovery of an amount previously deducted becomes an income item. See Houbigant, Inc., 31 B.T.A. 954, affd. (C.A. 2) 80 Fed. (2d) 1012, certiorari denied 298 U.S. 669; Estate of George H. Flinn, 45 B.T.A. 874. But petitioner filed no return for 1947, the year the sum was paid, *150 and the only ground for respondent's action here is presumably that he gave her credit for the deduction in computing the deficiency for that year. Since we have already held that there is no deficiency in any case, the sole justification for charging petitioner with this item has been eliminated. It is not clear whether a net loss carry-over from the 1949 is any longer material. But both parties seem to be confident that the matter can be disposed of in the recomputation. Accordingly, Decision will be entered under Rule 50. Footnotes
*. So stipulated.↩
1. "The examining agents made other attempts to determine the origin and source of the cash funds without success. * * *" [Resp. br., p. 23.]↩
2. "* * * Respondent seriously doubts the existence of the money. [Petitioner's cash accumulation prior to 1947.] His doubt is predicated upon the accuracy of the net worth statement * * * submitted in 1947. * * *" [Resp. br., p. 19.]↩
3. Even if we assume the interest payments charged by respondent, the deduction for interest paid on petitioner's tax liability leaves net income too small to be subject to tax. Respondent apparently rejects the theory that some part of the Savings Bonds may have been cashed sometime in 1947 or 1948. Even if so, and interest was collected in 1948, the burden was on him to show it. See Great Northern Railway Co., 8 B.T.A. 225, 276, affd. (C.A. 8) 40 Fed. (2d) 372, certiorari denied 282 U.S. 855↩, And, for 1947, petitioner was entitled to an interest deduction large enough to offset any probable interest recovery.